



# EMPLOYEE COMPLAINT FORM

Completion of this form is necessary to initiate a formal complaint. This form must be given to Human Resources in order to begin an investigation of your concern.
Your complaint is confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures.

**EMPLOYEE NAME:** Mary Louise Allen
**TITLE:** Assistant Professor
**DIVISION/DEPARTMENT:** Arts & Sciences
**DATE:** August 27, 2015
**DATE OF THE INCIDENT:** August 27, 2015

**Prior to submitting your concern to Human Resources, who else has been informed of your concern** *(Please list their name and/or title)*:
Ohio Attorney General's office, Vicki Bittinger (Generalist), Melissa Glanz (Title IX/HR Director), VP Chiappini, Dean Stephan, Chair Lund, AAUP, EEOC, Chief Weldon

**State the details of your complaint. Please be as specific as possible** (include the nature of the incident, what happened, identify any witnesses, location, etc.) **Attach additional sheets if necessary.**

Per my cited concerns with my first filing yesterday regarding the mandated meeting today which was attended by VP Chiappini, Chief Weldon, and Dean Stephan (please see below), additional retaliatory/respective profiling concerns follow:

1. VP Chiappini began the meeting by supplying me with a directive that I must contact the Columbus attorney employed by the college (? - this is unclear to me, as the *Ohio AG Office* stated that they employed the firm) and I must contact Attorney Perez by the following day at 5pm and have an appointment set by Friday, September 4, 2015. I was somewhat taken aback by this what-appeared-to-be stern directive in a formal meeting where disciplinary action – rather than simple inquiry - was cited as a possibility while providing no specifics regarding allegations despite my repeated attempts to acquire this information prior to the meeting so that I could be better informed, provided sufficient documentation/knowledge, and denied due process, etc. I informed him that I had followed up accordingly with each reply. The last email contact was made by me, and I had not heard back from this attorney at that particular point. He repeated his directive, and I have since complied with a secondary follow-up email. For the record, please see the attached thread as it proves that I have maintained contact, and Attorney Perez apologized for his respective delay after a second email sent by me today as a result of VP Chiappini's command. (I'm curious as to why VP Chiappini did not make this directive of the hired attorney rather than me as I had replied accordingly.)

2.  VP Chiappini continued to inform me that he had provided a directive in April to cease cc'ing the Board [which I'm still questioning the respective legality as, to my knowledge, it is protected under Whistleblower Protection Act, Board duties (ORC 3345.21 and Trustee Responsibilities/Department of Higher Education), and Governor Kasich's office was the office which encouraged me to contact the Board]; however, I abided until which time it could be resolved in the pending EEOC matters that are currently in the process of being assigned a respective investigator, per my conversation with the EEOC office two days ago.  VP Chiappini cited an email (that was the draft version with very personal attachments mistakenly sent for a pending criminal matter where I was a victim that was apparently unfortunately forwarded by Ms. Groh) which had appeared to have been mistakenly sent to Ms. Groh.  I informed him that I had no idea how this was sent to her. Had he provided me with this information when I initially requested it (numerous times before the meeting, and I'm still puzzled by the motive for not doing so), I could have researched what could have possibly occurred as my attorney cited possible safety concerns of hacking incidents yesterday.  At that point, I had assumed it was a draft email accidentally sent to the wrong people or my attorney's (and counselor's) cited concerns yesterday were coming to fruition, and VP Chiappini's response was that, *He would take that into consideration prior to determining disciplinary action.*  Again taken aback, I replied, *I'm going to be disciplined for an apparent mistake?* (for which I could not adequately answer being that he denied my requests for the information prior to meeting). He, once again, stated that he would take it into consideration.  I was quite dismayed by this unwarranted potential disciplinary action.  At that point, he stated that there was an additional concern that would be addressed by Dean Stephan where Chief Weldon's presence remained.

3.  Dean Stephan provided me with an email from Chief Weldon citing respective parking lots stating that for the "past four days, I had parked in the student parking lot."  Chief Weldon knew that I had arrived later on Wednesday (as he appeared to know that it is customary for me to be early), and this knowledge, obviously, induced a great amount of fear and anxiety as they both appeared to know a great deal about my respective schedule.  Honestly, it made me uncomfortable.  Please note that on Monday morning, I received a ticket (and to my knowledge, the faculty, staff, and/or administrators with whom I have spoken) parked around me at the precise time, in which I was cited, received no such warning/ticket.  Chief Weldon also stated that they were not ticketing the first week.  Again, it is quite disconcerting that it appears that I'm being profiled as this parking lot houses at least 100+ cars, and I have no distinguishing characteristics on my vehicle (and a common vehicle with a common color) as I was advised by my state domestic violence advocate to remove all distinguishing features; therefore, I have removed any items that would cause easy recognition.  At this point, I had been ruminating about the respective email concerns as to whom received such an email with attachments which were mistakenly drafted for two different parties (again, I could not prepare as I was being denied the specific information ahead of time), and it occurred to me that the initial party in which appeared to have received the communication was a part of the Athena International group for which we were soliciting speakers; therefore, this mistaken draft email was apparently sent to her due to her Athena group membership rather than her SSC affiliation which can be validated.  I asked Dean Stephan to share this information with VP Chiappini.

*Public records request as a result of these aforementioned actions in which I would think would also be helpful to investigators for the forthcoming investigations.

- Any video footage of M building student parking lot from Monday, August 24, 2015 through Thursday, August 27, 2015 from 7am-4pm.
- All parking warnings and tickets in the M building student parking lot received by vehicles with a faculty, staff, and/or administration parking pass from Monday, August 24, 2015 through Thursday, August 27, 2015 from 7am-4pm.
- Officer #2 identification
- Any and all correspondences including but not limited to emails, texts, scheduled calendar meetings, voicemails, etc. between, amongst, and/or including any employee staffed within SSC security office, SSC administration and/or their respective administrative assistants, Chair Lund and/or her respective administrative assistant(s), and/or HR staff members and/or their respective administrative assistants, addressing Mary Louise Allen and/or respective parking.
- Any faculty/staff member that was called in for a personal conference to speak of their respective parking violations from Monday, August 24, 2015 through Thursday, August 27, 2015 in the M building student parking lot.

I understand that I do have a pending records request as a result of information required in order to proceed with the involved agencies. However, I think it is additionally important to request the aforementioned information for obvious reasons.

Thank you for your time and attention.


**EMPLOYEE SIGNATURE:**   <u>Mary Louise Allen</u>          **DATE:**   <u>August 27, 2015</u>
*Electronically signed.*


**HR REPRESENTATIVE RECEIVED BY:**_____   **DATE:** _____

Previous complaint: *As HR and College administrators are already aware, I have been experiencing unabated discrimination and retaliation for numerous years. August 25, 2015 (with only one day notice), I was informed to attend a meeting with Chair Lund and VP Chiappini which could possibly be disciplinary. Per the email thread provided, I have been denied rights afforded to me under state/federal law (cited civilly and criminally) and within our respective College manual. When I was unable to attend due to scheduling conflicts with an extended offer to meet the following week to allow appropriate time to find representation and request specific concerns to prepare accordingly, I was, once again, provided with only one day notice of the forthcoming mandatory meeting which did not allow time for representation while being continuously denied further information regarding the alleged policy violations which could result in punitive measures. Furthermore, I was informed, against institutional policy and state law that I would not be allowed to record the meeting. Laws are being violated and fundamental rights are being denied including but not limited to civil/criminal codes involving intimidation, interference with civil rights, dereliction of duty, failure to report, obstructing justice/official business, sham legal processes, complicity, etc.*

*CHIAPPINI 2*



# EMPLOYEE COMPLAINT FORM

Completion of this form is necessary to initiate a formal complaint. This form must be given to Human Resources in order to begin an investigation of your concern.
Your complaint is confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures.

**EMPLOYEE NAME:** Mary Louise Allen
**TITLE:** Assistant Professor
**DIVISION/DEPARTMENT:** Arts & Sciences
**DATE:** August 26, 2015
**DATE OF THE INCIDENT:** August 26, 2015

**Prior to submitting your concern to Human Resources, who else has been informed of your concern** *(Please list their name and/or title)*:
Ohio Attorney General's office, John Perez, Esq., Dr. Jones (President), Vicki Bittinger (Generalist), Melissa Glanz (Title IX/HR Director), VP Chiappini, Dean Stephan, Chair Lund, AAUP, EEOC, Chief Weldon

**State the details of your complaint. Please be as specific as possible (include the nature of the incident, what happened, identify any witnesses, location, etc..) Attach additional sheets if necessary.**
As HR and College administrators are already aware, I have been experiencing unabated discrimination and retaliation for numerous years. Two days ago (with only one day notice), I was informed to attend a meeting with Chair Lund and VP Chiappini which could possibly be disciplinary. Per the email thread provided, I have been denied rights afforded to me under state/federal law (cited civilly and criminally) and within our respective College manual. When I was unable to attend due to scheduling conflicts with an extended offer to meet the following week to allow appropriate time to find representation and request specific concerns to prepare accordingly, I was, once again, provided with only one day notice of the forthcoming mandatory meeting which did not allow time for representation while being continuously denied further information regarding the alleged policy violations which could result in punitive measures. Furthermore, I was informed, against institutional policy and state law that I would not be allowed to record the meeting. Laws are being violated and fundamental rights are being denied including but not limited to civil/criminal codes involving intimidation, interference with civil rights, dereliction of duty, failure to report, obstructing justice/official business, sham legal processes, complicity, etc.

**EMPLOYEE SIGNATURE:** <u>Mary Louise Allen</u>          **DATE:** <u>August 26, 2015</u>
*Electronically signed.*

**HR REPRESENTATIVE RECEIVED BY:**_____          **DATE:** _____

GlANZ



# EMPLOYEE COMPLAINT FORM

Completion of this form is necessary to initiate a formal complaint.  This form must be given to Human Resources in order to begin an investigation of your concern.
Your complaint is confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures.

**EMPLOYEE NAME:**  Mary Louise Allen
**TITLE:**  Assistant Professor
**DIVISION/DEPARTMENT:**  Arts & Sciences/Social Sciences
**DATE:**  December 8, 2015
**DATE OF THE INCIDENT:**  Fall, 2013 – current (December 7, 2015)

**Prior to submitting your concern to Human Resources, who else has been informed (or been present) of your concern** *(Please list their name and/or title)*:
SSC Board of Trustees, Ohio Attorney General's Office, Vicki Bittinger (Generalist), President Para Jones, VP Chiappini, Dean Stephan, Chair Lund, AAUP, EEOC, Chief Weldon, Mr. Perez, Hannah Harris, Attorney English, DOJ

**State the details of your complaint.  Please be as specific as possible** (include the nature of the incident, what happened, identify any witnesses, location, etc.)  **Attach additional sheets if necessary.**

<u>HR Director Glanz</u> **(Title IX Coordinator as well)** has been an active participant in brazen harassment, disability/gender discrimination, and retaliation for numerous years.  After I had complained of gender discrimination/retaliation where the initial findings were in my favor, the SSC HR office, where Melissa Glanz serves as the Director, continued to ignore the harassing situation allowing this same male supervisor to evaluate me after displaying brash retaliation, per my complaint and subsequent investigation.  After the findings, my supervisor later continued his abusive pursuit of me informing the department at an open public meeting of his dissatisfaction with the findings while encouraging/entrapping department members to have the findings reversed, chastising anyone participatory in the investigation, and threatening anyone about filing such complaints with HR in the future (referring to HR as incompetent).  These actions, which were recorded, finally ended in his termination as my supervisor, but currently, he remains a colleague and an active member of the collusive ostracism as seen in the workplace bullying research.

As a result of these charges, my reasonable accommodation request (for a schedule I had before without an ADA request which was only nefariously problematic after I complained of gender discrimination/retaliation), my Whistleblower's complaint, initiating an AAUP chapter, etc. and is customary within the institution (per the employee records/published media of retaliation for participating in protected activity), HR Director Glanz has been instrumental in:

- cutting my salary by five figures,
- taking away overloads (only me when numerous open classes remained),
- decreasing overloads,
- making nefarious schedule changes,
- dissuading/threatening me from filing a Whistleblower's complaint,
- completely ignoring ADA laws (not initiating an interactive process and ignoring over 20+ requests for the "undue hardships" as required by law),
- being willfully blind of bogus credentials resulting in complicit taxpayer fraud,
- continuously diverting simplistic questions (as recently as yesterday),
- creating policies that are singularly adversarial to me using unlawful protocol (per the Ohio AG Office),
- violating numerous institutional policies within our respective manual,
- making a lawful process intentionally burdensome (for me and others - where the US DOL and Ohio Disability Services stated that this was one of the worst cases ever seen/heard),
- sending purposely corrupt and intentionally duplicative/disorganized files as a result of my public records request (resulting in intentional malfeasance according to the Ohio AG Office),
- refusing to correct straightforward laws with supervisors/administrators (regarding Open Public Meetings Act and recording policy/law) allowing for even more collusive abuse in an attempt to tire me of defending myself (which as the Title IX Coordinator and HR Director, she is well aware of both being civilly/criminally in violation of law),
- denying appropriate identifying credential signage to females,
- ignoring gender salary differentials (numerous times when asked) within the same department, with same hire date, with more credentials, etc.
- etc.

Ms. Glanz has a history of such harassing actions amongst current and former employees at the College and is persistent in her unabated efforts of violating criminal/civil laws and institutional policy despite my continued attempts to inform her of fundamental state statute/federal law and her legal, if not moral, obligation to follow it accordingly. Years of emails/recordings/transcripts prove these respective points. The College possesses the necessary documentation validating all of these aforementioned points, and as I stated to the SSC Board of Trustees (November, 2015) and Attorney Perez *(during his respective beguiling investigation with deceptive findings but again, he was not a neutral source; he was hired by the Ohio AG where I was quite uncomfortable supplying documentation when he did not reply to my simplistic queries, but my transcripts will prove that these were indeed fallacious findings lacking genuine effort while serving as willfully blind - not securing the augmenting evidentiary documentation to which he had access and even citing one issue as non-problematic that the Ohio AG, who enlisted him, recently opined as speciously dubious).* I do not get paid to defend myself against such abuse, and if we cannot trust HR (especially the Director) to act in accordance with the law, we should be quite concerned, as respective employees and stakeholders.

I spend approximately 5-40 hours a week defending myself against this unequivocal unlawful conduct by administrators/supervisors/HR at a public institution receiving federal funds where we should be a paragon of propriety in accordance with law which has made it quite difficult to do my job when being harassed to this magnitude, and protecting myself against such illicit behavior is nowhere in my job description. As an activist

in the realm of civil rights, it is often sadly customary for perpetrators to defend their illicit conduct using the unfortunate stereotypical misogynistic pejorative default portrayal when simple law cannot validate their respective abusive and hostile actions, and this is what continues to occur within executive sessions. I have attended the Ohio AG educational and EEOC seminars and workshops, and I cannot make it any clearer as to why these supervisors/administrators are in egregious violation of the law. I ask very unambiguous questions of these Ohio AG attorneys while I attend these conferences (recorded), and I am receiving lawful guidance until I use that same information/same scenario with this institution. No one can explain to me the duplicity in these explanations. The attorneys directing these educational seminars are serving as College counsel, yet they are informing me that you are in violation of the law. While I am aware of my options to proceed with these matters legally in federal/state courts and with neutral third party agencies, it is also my legal duty (if not my moral obligation), per our *Policies and Procedures Manual*, to also pursue these matters institutionally as well. According to our zero tolerance policy, Ms. Glanz should be terminated for this aforementioned unlawful conduct.


**EMPLOYEE SIGNATURE:**   *Mary Louise Allen*          **DATE:**   December 8, 2015
*Electronically signed.*


**HR REPRESENTATIVE RECEIVED BY:**_____          **DATE:** _____



*HR Torgler*

# EMPLOYEE COMPLAINT FORM

> **Completion of this form is necessary to initiate a formal complaint. This form must be given to Human Resources in order to begin an investigation of your concern.**
> **Your complaint is confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures.**

**EMPLOYEE NAME:** Mary Louise Allen
**TITLE:** Assistant Professor
**DIVISION/DEPARTMENT:** Arts & Sciences/Social Sciences
**DATE:** February 1, 2016
**DATE OF THE INCIDENT:** Fall, 2013 – current (February 1, 2016)

**Prior to submitting your concern to Human Resources, who else has been informed (or been present) of your concern** *(Please list their name and/or title)*:
SSC Board of Trustees, Ohio Attorney General's Office, Vicki Bittinger (Generalist), President Para Jones, VP Chiappini, Dean Stephan, Chair Lund, AAUP, EEOC, Chief Weldon, Mr. Perez, Hannah Harris, Attorney English, DOJ

**State the details of your complaint. Please be as specific as possible** (include the nature of the incident, what happened, identify any witnesses, location, etc.) **Attach additional sheets if necessary.**

**HR Generalist Torgler** has been an active participant within this complicit network of brazen harassment and retaliation for several years violating numerous institutional policies and state/federal laws. After I had complained of gender discrimination/retaliation where the initial findings were in my favor, the SSC HR office continued to ignore the harassing situation allowing this same male supervisor to evaluate me even after displaying brash retaliation, per my complaint and subsequent investigation.

Due to a very limited HR staff (of three members which is sadly often referred to by many as incompetent/corrupt) and a well-known bias, I informed HR Director Glanz (as there are only two HR Generalists) that my best option to <u>possibly</u> get a fair investigation would be HR Generalist Bittinger as Ms. Torgler was very close with Dr. Gibson-Shreve (VERY good friends with Marc Hostetler who was eventually terminated from his supervisory role, per my complaint) who I assumed and still assume is spearheading all of these retaliatory measures using a collusive network including but not limited to Chair Lund, Dean Stephan, Mr. Gerber, Mr. Chiappini, Ms. Glanz, Mr. Starnes, etc. to harass me - simply stated, my entire chain of command which is a common unfortunate SSC tactic to persuade employees to surrender against such unlawful and abusive supervisory acts or constructively discharge (see exit letters, etc.).

As I informed Ms. Bittinger and is documented (2013), it would be my expectation that Dr. Gibson-Shreve recuse herself from any matters involving me as per a situation in 2013 resulted in her attempting to cite policies/laws that were not policies/laws and was quite angry over simplistic innocent, yet warranted, questions (which is a continuing problem for her, per the Dr. Diab situation and the mysterious missing documentation, her own personnel record, via Dr. Jones statements, other colleagues, etc.).

After the initial findings, my supervisor later continued his abusive pursuit of me informing the department at an open public meeting of his dissatisfaction with the findings while encouraging/entrapping department members to have the findings reversed, chastising anyone participatory in the investigation, and threatening anyone about filing such complaints with HR in the future (referring to HR as incompetent).  These actions, which were recorded, finally ended in his termination as my supervisor, but currently, he remains a colleague and an active member of the collusive ostracism as seen in the workplace bullying research. At this point, HR finally intervened and removed him from his supervisory capacity but continued to harass, discriminate, and retaliate against me for these aforementioned rightful, legally protected, and proven concerns, but at a cost of making my employment a daily harassing hell where most employees have simply quit or cowered to the abuse.

As a result of these charges, my reasonable accommodation request (for a schedule I had before without an ADA request which was only nefariously problematic after I complained of gender discrimination/retaliation), my Whistleblower's complaint, initiating an AAUP chapter, etc. and is customary within the institution (per the employee records/published media of retaliation for participating in protected activity), HR Generalist Torgler has been explicitly involved in the following:

- ADA/FMLA violations (me and others)
- numerous Privacy Act violations
- tax fraud of a public institution
- 2903.22  Menacing
- 2903.36  Whistleblower protection
- 2921.01  Offenses against justice and public administration
- 2921.03  Intimidation
- 2921.04  Intimidation of a victim and witness
- 2921.05  Retaliation
- 2921.21  Compounding a crime
- 2921.22  Failure to report a crime
- 2921.24  Disclosure of confidential information
- 2921.31  Obstructing official business
- 2921.32  Obstructing justice
- 2921.44  Dereliction of duty
- 2921.45  Interfering with civil rights
- 2921.52  Using sham legal process
- 2932.31  Corrupt activity
- 2932.32  Engaging in a pattern of corrupt activity
- 4113.06  Negligence of an employer
- 4113.07  Contributory negligence
- 4113.51  Whistleblower protection
- 4113.52  Reporting violation of law by employer or fellow employee
- 18 U.S. Code § 242  Deprivation of rights under color of law

The College possesses the necessary documentation validating all of these aforementioned points, and as I stated to the SSC Board of Trustees (November, 2015) and Attorney Perez *(during his respective beguiling investigation with deceptive findings but again, he was not a neutral source; he was hired by the Ohio AG where I was quite uncomfortable supplying documentation when he did not reply to my simplistic queries, but my transcripts will prove that these were indeed fallacious findings lacking genuine effort while serving as willfully blind; he did not secure the augmenting evidentiary documentation to which he had access and even cited one issue as non-problematic that the Ohio AG, who enlisted him, recently opined as speciously dubious; furthermore, he has continued to harass me despite three warnings to cease and desist)*, I do not get paid to defend myself against such abuse, and if we cannot trust HR to act in accordance with the law, we should be quite concerned, as respective employees and stakeholders.

**I spend approximately 5-40 hours a week defending myself against this unequivocal unlawful conduct** by administrators/supervisors/HR at a public institution receiving federal funds where we should be a paragon of propriety in accordance with law which has made it quite difficult to do my job when being harassed to this magnitude, and protecting myself against such illicit behavior is nowhere in my job description. As an activist in the realm of civil rights, it is often sadly customary for perpetrators to defend their illicit conduct using the unfortunate stereotypical misogynistic pejorative default portrayal when simple law cannot validate their respective abusive and hostile actions, and this is what continues to occur within executive sessions. I have attended the Ohio AG educational and EEOC seminars and workshops, and I cannot make it any clearer as to why these supervisors/administrators are in egregious violation of the law. I ask very unambiguous questions of these Ohio AG attorneys while I attend these conferences (recorded), and I am receiving lawful guidance until I use that same information/same scenario with this institution. No one can explain to me the duplicity in these explanations. The attorneys directing these educational seminars are serving as College counsel, yet they are informing me that you are in violation of the law. While I am aware of my options to proceed with these matters legally in federal/state courts and with neutral third party agencies, it is also my legal duty (if not my moral obligation), per our *Policies and Procedures Manual,* to also pursue these matters institutionally as well. According to our zero tolerance policy, Ms. Torgler should be terminated for this aforementioned unlawful conduct.

**EMPLOYEE SIGNATURE:**  *Mary Louise Allen*　　　　**DATE:**  <u>February 1, 2016</u>
*Electronically signed.*

**HR REPRESENTATIVE RECEIVED BY:**_____　　　**DATE:** _____

*LUND*

# EMPLOYEE COMPLAINT FORM

Completion of this form is necessary to initiate a formal complaint.  This form must be given to Human Resources in order to begin an investigation of your concern.  Your complaint is confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures.
*Please make appropriate redactions/withdrawal of information in accordance with Whistleblower Protection Act, Privacy Act, FERPA, HIPAA, ADA, etc.*

**EMPLOYEE NAME:** Mary Louise Allen
**TITLE:** Assistant Professor
**DIVISION/DEPARTMENT:** Arts & Sciences/Social Sciences
**DATE:** January 8, 2016
**DATE OF THE INCIDENT:** Fall, 2014 – current (January 14, 2016)

**Prior to submitting your concern to Human Resources, who else has been informed (or been present) of your concern** *(Please list their name and/or title)*:
SSC Board of Trustees, Ohio Attorney General's Office, Vicki Bittinger (Generalist), Melissa Glanz (HR Director), President Para Jones, VP Chiappini, Dean Stephan, AAUP, EEOC, Mr. Perez, Hannah Harris, Attorney English, DOJ

**State the details of your complaint.  Please be as specific as possible (include the nature of the incident, what happened, identify any witnesses, location, etc.)  Attach additional sheets if necessary.**

**Ms. Danette Lund (Department Chair)** has been an active participant in brazen harassment, disability/gender discrimination, and retaliation for over a year.  After my previous supervisor was terminated as Department Chair, per my internal complaint of discrimination/retaliation, Danette Lund was named as our new Department Chair.

As a result of this aforementioned situation, a collusive network of numerous individuals, including Chair Lund, have continued to discriminate and retaliate.  Although I had my desired schedule prior to filing this aforementioned charge without a reasonable accommodation request, it was apparent that there were nefarious attempts to decrease my salary and sinisterly modify my schedule.  Hence, I placed an ADA request to maintain schedules that I have had in the past (without any such ADA request), and with 60-70+ offerings and only six full-time professors, this request could have been easily allotted.  There was no "undue hardship" (which is required by law when denying an ADA request; I have repeatedly asked for this "undue hardship" only to be ignored).  There have been only nefarious attempts to deny my request (lacking the legally mandated "good faith effort").

Again, my reasonable accommodation request (for a schedule that I have had before without an ADA request was only nefariously problematic after I complained of gender discrimination/retaliation), my Whistleblower's complaint, initiating an AAUP chapter, etc. and is customary within the institution (per the employee

records/published media of retaliation for participating in protected activity), Chair Lund has been instrumental in:

- excluding me from work-related emails (after I informed my Dean twice - with others' actions - to cease work-related email exclusion, and I was assured that it would not happen again; it did a third time with Chair Lund) which caused me to miss mandatory meetings (where no one contacted me as to my absence), caused a missed deadline for professional development funds, etc.
- cutting my salary by five figures,
- taking away overloads (only me when numerous open classes remained; I possess an email where her sinister attempts are categorically proven where she is hiding information stating that there would be no way for me to know – "good faith effort"),
- decreasing overloads,
- making nefarious schedule changes,
- completely ignoring ADA laws (not initiating an interactive process and ignoring numerous requests for the "undue hardships" as required by law),
- readmitting a student in my class who should have been dropped in accordance **with federal financial aid guidelines** (and ignoring subsequent emails citing this unlawful readmission),
- being willfully blind of bogus credentials resulting in complicit taxpayer fraud where mandatory reporting is a requirement under law;
- ignoring salary differential between genders (in the same department, same hire date, with females possessing more credentials, yet receiving less salary)
- forwarding a simplistic question and portraying query as a formal public records request where I have been unnecessarily pejoratively portrayed to the Board in Executive Session using such sinister strategic measures resulting in disparate treatment,
- scheduling mysterious unknown disciplinary meetings where I have done nothing to warrant disciplinary actions while ignoring my repeated requests to inquire as to what the meeting content contained (ie reminiscent to being summoned to a court with no idea as to the allegations),
- violating numerous institutional policies/ethical guidelines within our respective manual,
- making a lawful process intentionally burdensome (where the US DOL and Ohio Disability Services stated that this was one of the worst cases ever seen/heard),
- providing me with my first ever (in my lifetime) negative personnel evaluation where she cited:
  - that because I had utilized my medical leave the week prior to the semester, I did not provide her with enough time which was caused by her (and other's) abuse of me.  Please note that when I had met with her to discuss my leave (August, 2014), she stated that "it was not a problem at all….things like this happen all of the time.….she would be able to find others to take the classes." However, nine months later (May, 2015), she cites it as problematic in my personnel record (which I refused to sign).  Furthermore, as I stated to her, this would be disability discrimination as well being that if an employee were to have a heart attack the week prior to the semester, I doubt that she would have penalized them within their respective personnel evaluation.
  - that because I have defended myself against such illicit actions, I have not communicated appropriately (meaning I should remain quiet implicitly sending the *chilling effect* message that if you attempt to defend yourself against unlawful activity, you will be penalized); however, I am able to prove that (1) I have never been unprofessional; whereas, a colleague has been threatening, and to my knowledge, she has not cited him as problematic for communications, (2) I have simply defended myself (always professionally and civilly) against unlawful abusive treatment.
- denying me of removing one of my overloads (which would have been a voluntary pay cut and according to ADA law and our numerous offerings, I should have never had to consider) in order to pursue medical treatment knowing that she could have easily found someone to teach that respective class; however, she stated that she would remove one of my online classes knowing that I still could not

pursue the treatment prescribed should that particular web class be removed. This is cruel. This is inhumane. This is retaliatory. This is illegal (criminally and civilly).

- Stating that I had a student complaint (which is rare), yet not following up on it despite my repeated attempts to inquire/handle the situation,
- While there were numerous concerns/misunderstandings regarding commencement within the College with numerous faculty members, it was my understanding during our October board meeting that the fall commencement was not configured into our expected contractual attendance; however, spring commencement was mandatory where we would have to use a personal day. I am currently polling numerous faculty members who possessed the same understanding, and I will hopefully clarify with others and get back with the College.
- Making nonsensical demands of 72 hours notice for syllabi deadline completion which is a 15-25 hour project for those of us who have four preps – but only for psychology faculty; whereas, sociology faculty have approximately two weeks with an intent to threaten/discipline me validating ongoing harassment,
- etc.

The College possesses the necessary documentation validating all of these aforementioned points, and as I stated to the SSC Board of Trustees (November, 2015) and Attorney Perez *(during his respective beguiling investigation with deceptive findings but again, he was not a neutral source; he was hired from the Ohio AG where I was quite uncomfortable supplying documentation - to which he already had access - when he did not reply to my simplistic queries, but my transcripts will prove that these were indeed fallacious findings lacking genuine effort while serving as willfully blind - not securing the augmenting evidentiary documentation to which he had access and even citing one issue as non-problematic that the Ohio AG, who enlisted him, recently opined as speciously dubious)*, I do not get paid to defend myself against such abuse, and if we cannot trust supervisors/administrators to act in accordance with the law, we should be quite concerned, as respective employees and stakeholders.

I spend approximately 5-40+ hours a week defending myself against this unequivocal unlawful conduct by administrators/supervisors/HR at a public institution receiving federal funds where we should be a paragon of propriety in accordance with law which has made it quite difficult to do my job when being harassed to this magnitude, and protecting myself against such illicit behavior is nowhere in my job description. As an activist in the realm of civil rights, it is often sadly customary for perpetrators to defend their illicit conduct using the unfortunate stereotypical misogynistic pejorative default portrayal when simple law cannot validate their respective abusive and hostile actions, and this is what continues to occur within executive sessions. I have attended the Ohio AG educational and EEOC seminars and workshops, and I cannot make it any clearer as to why these supervisors/administrators are in egregious violation of the law. I ask very unambiguous questions of these Ohio AG attorneys while I attend these conferences (recorded), and I am receiving lawful guidance until I use that same information/same scenario with this institution. No one can explain to me the duplicity in these explanations. The attorneys directing these educational seminars are serving as College counsel, yet they are informing me that the College's actions are in violation of the law. While I am aware of my options to proceed with these matters legally in federal/state courts and with neutral third party agencies, it is also my employee duty to file internally (if not my legal obligation to file criminally), per our *Policies and Procedures Manual*, to also pursue these matters institutionally as well. According to our zero tolerance policy, Ms. Lund should be terminated for this aforementioned unlawful conduct.

**EMPLOYEE SIGNATURE:**  *Mary Louise Allen*

**DATE:**  <u>January 14, 2016</u>
*Electronically signed.*

HR REPRESENTATIVE RECEIVED BY:_____        DATE: _____

GERBER



*[handwritten margin notes: plottery of rapist / attempted murderer & nonsensical, ... regarding this matter]*

## EMPLOYEE RESPONDENT FORM

Completion of this form is necessary to formally respond to an alleged complaint. This form must be given to Human Resources by all responding parties in order to continue investigating the incident. Your response will be held as confidential and the details of your statement will be reviewed as needed with those evaluating this concern in accordance with the college's policies and procedures. *Please make appropriate redactions/withdrawal of information in accordance with Whistleblower Protection Act, Privacy Act, FERPA, HIPAA, ADA, etc.*

**EMPLOYEE RESPONDENT NAME:** Mary Louise Allen
**TITLE: Assistant Professor of Social Science**
**DIVISION/DEPARTMENT: Social Science**
**DATE:  September 28, 2015**
**DATE OF THE INCIDENT: Various retaliatory attempts by Mr. Gerber for Whistleblower claims that remain unacknowledged, disproved, inaccurate, and/or collusively hidden**

## BRIEF DESCRIPTION OF THE COMPLAINT IN WHICH YOU ARE NAMED:

I unequivocally deny any and all of these claims and cite retaliation as the respective motive. Anything that Mr. Gerber alleges as wrongdoing is unequivocally specified **as afforded rights and/or expected behavior** of a public employee cited within institutional policy and/or state/federal laws (hence, my filings with EEOC, SPBR, DOJ, OSHA, etc.).  Furthermore, I am actually the victim of Mr. Gerber's unabated harassment, discrimination, administrative abuse, and retaliation including but not limited to:

- Hostile email exchange between former supervisor (terminated as a result of my grievance) citing me as "More Hilarity"
- Substantially hostile email replies/chastised where I possessed simplistic questions
- Comments made to me and others (including Dr. Gibson-Shreve) asking if we "want to squeeze [his] Freud"  (Freud doll)
- Email hostile threat sent to Department Chair/Dean demanding my 9am class where he referred to me in an unwarranted defamatory manner, and Dean Stephan initially interpreted the threat as his resignation
- Email sent to colleagues by Mr. Gerber (after I was forced/entrapped to reveal my ADA diagnosis of Complex PTSD from childhood trauma in public forum) entitled (with video attachment) *"Childhood is Not a Mental Disorder"*
- A student shared with me a negative remark regarding me made to her by Mr. Gerber while she was a student in his class
- This unwarranted grievance

I assume that, should HR continue to investigate this matter further, these aforementioned concerns will also be thoroughly addressed. Emails were previously sent to HR proving these aforementioned points.

### Bryan Gerber's formal complaint states the following:
Harassment – Impugning my name and reputation
Creating a hostile work environment
Retaliation for perceived slights

Ms. Mary Allen has made continual and on-going attempts to impugn my name, reputation, and career. The attached document (Appendix A) represents one such attempt. This is the (partial) transcript of an email Ms. Allen circulated to a number of my colleagues and associates outside the college. Appendix B represents my answer(s) to the information contained within. Although the sender of this correspondence is listed only as "United States Ohio Citizen", a portion of the Allen is the only outside party to have had access to this information through her numerous public record requests in which I was named. Therefore, this document can easily and reasonably be tied to Ms. Allen. Additionally, Ms. Allen has recently made another public record request naming specific information contained in Appendix A.

By her own admission, Ms. Allen had addressed her concerns regarding my credentials on a number of occasions and to a number of administrators. Other numerous employees also reported such concerns. Mr. Gerber did not file grievances against these individuals – only me. These concerns were addressed by the Administration and Ms. Allen was advised that all was in appropriate order. Ms. Allen has persisted with these attacks despite being told the subject was moot. Under the Stark State College "Anti-Harassment" Policy (15-14-13, #4), Ms. Allen has created a hostile work environment and has made every attempt both within and outside the College to negatively impact my reputation and career through her persistent harassment. The Stark State College Code of Ethics and Professional Behavior (15-14-27) outlines concepts important to maintaining a collegial atmosphere among faculty, staff, administration, and students. Ms. Allen has chosen to ignore several of these important principles specifically; Principle II – Non-Malfeasance, Principle III – Beneficence, Principle IV – Justice, and Principle VI – Veracity. Please consult the Ohio Ethics Law and related statutes regarding this matter Within these principles, Ms. Allen's untruths, misrepresentations, and other behaviors have created a hostile work environment, were intended to soil my reputation and career, and appear to be in retaliation for unknown and unstated reasons. Please see numerous citations within the P&P that prohibit retaliation against a protected class including but not limited to victims reporting discrimination, Whistleblower concerns, etc. Furthermore, under state/federal law and to my knowledge, harassment cannot be cited for any good faith reports under the *Whistleblower Protection Act*. The College has yet to disprove any allegations regarding this matter made by me and numerous other employees questioning the accreditation of Mr. Gerber's degrees (1999, 2002) from California Coast University (cited in a 2004 US GAO Congressional Report as a "diploma mill"). Additionally, please note that Auditor Yost recently prosecuted a(n) similar/almost identical case (Westerville, 2015).

There appear to be institutional attempts (i.e. dereliction of duty/retaliation/interference with civil rights, obstructing justice, etc.) to collusively hide this matter with state/federal agencies including but not limited to: (1) it was relayed to me that a Board of Trustees' member admittedly acknowledged the Board's awareness of the probable dubiety of these respective graduate degrees/signage (please contact SSC Board Members), (2) Dean/Provost Gibson-Shreve

(who was made aware of this situation approximately four years ago by two employees) dismissed such serious concerns citing that it was simply a disgruntled employee (please see Provost Gibson-Shreve email to Ms. Cathy Hill in Chancellor's Office where she renounced Ms. Hill's offer to investigate the matter/accreditation issue; please also contact Ms. Hill), (3a) HR Director Glanz discouraged the usage of Whistleblower filing, which is recorded, until the College passed a policy (despite it already being state/federal law), (3b) HR Director Glanz not being able to answer simplistic questions of reasoning behind PhD signage/HR listing and accreditation issues of the PsyD (per a public records request) where stated she did not know why the PhD title was listed as office signage/filed in HR and appeared not to find it necessary to investigate (i.e. willful blindness) the discrepancy causing illicit usage of taxpayer dollars and gender discrimination being that four females in the same department, hired at the same time, with more credentials were paid substantially less over the past six years, (4) Also no explanation was received when addressed in a meeting with Department Chair Lund, Dean Stephan, and HR Generalist Vicki Bittinger, (4) VP Chiappini continued to state that the matter was handled but ignored the claims with no such specificity as to the accreditation concerns that allowed for the unaccredited "doctorate" status. Many employees believed that it was highly encouraged for Mr. Gerber to pursue the necessary and required at-time-of-hired graduate degree(s) which would make him ultimately eligible to teach; however, to my knowledge, he still does not possess an accredited doctorate degree, and it is highly illegal/unethical to allow for such pursuits on the taxpayer time/dollar while being equally unfair to the SSC students who should expect such authentic accredited credentials of their respective instructors. Lastly, according to research, possible litigation could result from the individual who could have been hired – but was not - with the appropriate credentials.

It is actually with some sadness that I levy this formal complaint of harassment as well as creating a hostile work environment against Ms. Allen. I value the expertise of my colleagues and the wonderful work that is done to improve the lives of our students. However, issues concerning Ms. Allen have persisted much too long and it has had a profound impact not only on me but on the entire Department, and potentially the College, as well.

This filing is an evident retaliatory attempt by Mr. Gerber, which I am certain that our HR Department and Chief Weldon will investigate and proceed appropriately in accordance with the laws of taxpayer collusion, gender discrimination, criminal concerns (cited in ORC 2921), and/or the Whistleblower Protection Act (in order to avoid the "chilling effect" it has on all potential good faith efforts). Mr. Gerber has a history of such harassing and hostile communications with others. Please note the fact that he pursued a complaint against only me, while ignoring numerous other colleagues who either shared and/or reported these same concerns, and such retaliation is well-cited within institutional policy and state/federal law. In fact, one employee kept a journal of his/her concerns regarding Mr. Gerber in which he/she encouraged others to report credential concerns anonymously. Furthermore, two other colleagues received student comments regarding these same disconcerting issues.

The claims made by many within the College have yet to be disproved as the evidence validates the claims. California Coast University was never accredited, via a 2004 US GAO Congressional Report, where Mr. Gerber's two graduate degrees appear to be conferred prior to the 2004 report referring to the institution as a "diploma mill." Furthermore, SSC does not cover tuition for an academic institution without regional accreditation (which establishes problematic duplicity regarding institutional accreditation expectations).

**Prior to submitting your response to Human Resources, have you discussed \*this matter with anyone else?** *(Please list their name and/or title)*:

To the best of my recollection, this matter (i.e. grievance):

Attorneys
VP Chiappini
SSC Human Resources
Chief Weldon
Various state/national organizations (who were cc'ed on questions/concerns regarding this aforementioned matter)

**State the details of your response to the complaint in which you have been named.  Please be as specific as possible (include the nature of the incident, what happened, identify any witnesses, location, etc.)  Attach additional sheets if necessary.**

I believe that I have addressed all matters in the replies above; however, if any further clarification is needed in order to cease these retaliatory efforts, I look forward to the opportunity of addressing these issues within the institution, forthcoming external civil/criminal investigations, and possible litigation.

EMPLOYEE SIGNATURE:_____ DATE: _____

HR REPRESENTATIVE RECEIVED BY:_____ DATE: _____

**STARK STATE COLLEGE**
**GRIEVANCE INFORMATION FORM**

Completion of this form is necessary to initiate Step 1 of the formal grievance procedure. This form must be given to the Director of Human Resources within 30 calendar days of the last occurrence of the incident being grieved. Incidents that occurred more than 30 calendar days from the date this form is received cannot be grieved. Only one incident should be submitted per form. The grievance process is governed by the Grievance Policy contained in the College's Policies and Procedures. Please see the Director of Human Resources if you have questions.

Your Name: *Mary Louise Allen*

Your Position: *Asst. Professor*

Your Department and Division: *Social Sciences / A+S*

Date(s) of the Incident: *Three years / Discipline  2/8/2016  */Insubordinary/m*

State the details of your complaint (attach additional sheets if necessary): *Attached*

What policy, procedure or law do you feel has been violated? Please reference the specific section of the College's Policies and Procedures or the law violated. *See attached*

What remedial action has been taken up to the date of the filing of this grievance? *Three years of harassment / Illegal directives /*

What do you think should be done to resolve your complaint? *See attachments*

Your Signature: *Mary Louise Allen*  Today's Date: *3/10/2016*

Received by: _____  Date: _____

TO:    Dr. Para Jones, SSC President
       Ms. Vicki Bittinger, HR Generalist


RE:    Grievance against illicit, harassing, and retaliatory disciplinary
       measure of "insubordination" issued February 9, 2016 by Mr. Tom Chiappini
       (VP), Mr. Andy Stephan (Dean), Dr. Lada Gibson-Shreve (Provost), Ms. Glanz
       (HR Director), Ms. Torgler (HR Generalist), and Ms. Danette Lund (Department
       Chair

*Due to this aforementioned involvement, I am forwarding this to the President's Office
as according to our chain of command chart, this matter should be heard before Dr.
Jones utilizing my Loudermill rights to be heard in open public forum while recording
and with counsel present.*

Regarding February 9, 2016 unwarranted discipline by Mr. Chiappini informing me
that I failed to follow HIS December, 2015 illicit directive (where a federal
investigator informed me that that such mandates are unlawful) **threatening that if
I report matters** concerning Whistleblowers, discrimination, harassment, and/or
**retaliation to anyone within our public institution including but not limited to
our union/advocacy group, HR, supervisors, Board, etc.,** I will be disciplined.
There was no due process with this directive; it was simply sent to me with no
bilateral dialogue.

Because I was continuously being abused and assaulted (where I have been
hospitalized as a result) and while knowing that members at this institution have
met/communicated directly/indirectly with my rapist and attempted murderer who
stated that he would help the College harass me if I reported his assaults, I
continued to defend myself utilizing all legal routes afforded to me as a public
employee; however, the aforementioned individuals continued to ignore, divert, and
harass me further with unwarranted nonsensical discipline.  I have experienced
three years of reprehensible abuse by a collusive network with no regard for law,
and the thousands of pages of documentation/recordings/transcripts validate this
matter. The abuse is daily/sometimes hourly.  I have a pending EEOC matter (2014)
that has been recently assigned an investigator.

For years, this network has been harassing me as a result of my proven internal
discrimination/retaliation claim which subsequently ended in my supervisor's
termination.  As is well-known amongst the employees at this College, if you
complain, you will be harassed into constructively discharging (please see exit
letters).  Two statements from two separate former colleagues follow:

*"We are scared sheep. Nobody speaks up for fear of having your schedule messed with
and your overloads taken away. That is why this blog is anonymous."* (December,
2012)

*"This year has been extremely stressful and trying, and my physical and emotional health has suffered from it. At times, I have feared for my safety from the angry outbursts of a coworker, and I have even requested to be transferred to another department but was denied. Unfortunately, I do not see any changes in the future. I have heard from **four** health professionals that no job is worth my health. It is now time I heeded it. I have requested to be transferred to another department, but was denied by Mr. Tom Chiappini. Unfortunately, I do not see any changes coming in the future."* (August, 2011)

She was absolutely right. The most recent activities follow:

Mr. Chiappini appears in my office to inform me that I cannot copy the SSC Board of Trustees on emails despite Governor Kasich's office informing me that since my chain of command was doing nothing about the discrimination/retaliation, I should contact our Board members, again per Governor Kasich's constituent. However, Mr. Chiappini provides an illicit directive stating that I cannot contact the Board despite it being transparently unconstitutional.

Mr. Chiappini (and Ms. Lund) continued to attempt to make simplistic requests official public records requests while attempting to pejoratively portray me utilizing misogynistic terminology to the Board in executive session as demanding and problematic.

Mr. Chiappini has referred to my ADA reasonable accommodation requests as a request of "privilege" while being complicit in denying my simple requests for a schedule that I have had before (without a reasonable accommodation request).

I have been called in for nonsensical fishing expeditions (i.e. mystery meetings) with no due process denying me the ability to record when our P&P explicitly states that I can record such meetings. I have also asserted Loudermill rights for over a year only to be ignored/denied. This network has a complete disregard for the law and institutional policy.

In a marathon-relay to attempt to discipline me prior to speaking at the March board meeting and the March 15 contractual deadline, I have experienced forty days of reprehensible/egregious/unlawful abuse that would result in the harm of any reasonable person. I have irreversible damage as a result of these actions.

Civil AND criminal laws regarding Whistleblower Protection, ORC 2921 including but not limited to intimidation, intimidation of a victim/witness, retaliation, tampering with evidence, compounding a crime, failure to report a crime, disclosure of confidential information, obstructing official business, obstructing justice, dereliction of duty, interference with civil rights, using sham legal processes, etc. As previously stated, labor relations law (ie unfair practices, etc.) have been violated denying due process. My rights under Loudermill, Garrity, AC privilege, court order, etc. Every statute within our Code of Ethics 33:57:15-14-27 has been violated by

this network.  Our P&P also reinforces laws regarding anti-harassment, retaliation, anti-discrimination, etc.  Our recordings policy has been denied by HR, administration, etc. despite its allowance under such circumstances.

I have never witnessed such brazen violation of the law at a public institution that should be a paragon of propriety.

**STARK STATE COLLEGE**
**GRIEVANCE INFORMATION FORM**

Completion of this form is necessary to initiate Step 1 of the formal grievance procedure. This form must be given to the Director of Human Resources within 30 calendar days of the last occurrence of the incident being grieved. Incidents that occurred more than 30 calendar days from the date this form is received cannot be grieved. Only one incident should be submitted per form. The grievance process is governed by the Grievance Policy contained in the College's Policies and Procedures. Please see the Director of Human Resources if you have questions.

Your Name:

Your Position:

Your Department and Division:

Date(s) of the Incident: Three Years / Disciplined 3/10/16 / Unpaid Suspension

State the details of your complaint (attach additional sheets if necessary): See attached

What policy, procedure or law do you feel has been violated? Please reference the specific section of the College's Policies and Procedures or the law violated. See attached

What remedial action has been taken up to the date of the filing of this grievance?

What do you think should be done to resolve your complaint?

Your Signature: _____ Today's Date: 3/10/16

Received by: _____ Date: _____

TO:    **Dr. Para Jones, SSC President**
          **Ms. Vicki Bittinger, HR Generalist**


RE:    **Grievance against illicit, harassing, and retaliatory disciplinary measure of "unpaid suspension" issued March 9, 2016 by Mr. Tom Chiappini (VP), Mr. Andy Stephan (Dean), Dr. Lada Gibson-Shreve (Provost), Ms. Glanz (HR Director), Ms. Torgler (HR Generalist), and Ms. Danette Lund (Department Chair**

*Due to this aforementioned involvement, I am forwarding this to the President's Office as according to our chain of command chart, this matter should be heard before Dr. Jones utilizing my Loudermill rights to be heard in open public forum while recording and with counsel present.*

Regarding March 9, 2016 unwarranted discipline by Mr. Chiappini. On the evening of March 9, 2016 after delivering my presentation to the SSC Board of Trustees regarding the fact that I'm threatened that if I participate in protected activity, I'm disciplined. THEN, if I don't participate (according to his directive that informed me to cease and desist in protected activity), I'm entrapped into speaking about this same matter, and when I utilize my rights/directives of court order, AC privilege, Garrity rights, Loudermill rights, etc due to pending litigation, I'm disciplined.

Mr. Chiappini who I've cited as harassing me obsessively ambushed me at this meeting forcing me into a dark side room where I was in fear.

Women who report sexual harassment/discrimination, disability discrimination, and/or retaliation are harassed into silence. Men who ask women to "squeeze their Freuds" while holding a doll in their penile region are allowed to harass and even bring charges against the victim, further harass their victims with email hostility, and threaten supervisors with no such ramifications. This sexism is brazenly evident in other personnel matters as well. (Please see information, via my February 9, 2016 grievance of an unwarranted/nonsensical insubordination filing).

This unwarranted retaliatory unpaid suspension will cause great hardship to my students as well (as due to illness/irreversible harm where I was in the hospital again from these matters, I have cancelled two previous classes) and should not be slated as scheduled **as due process has not occurred.** I am afforded my rights to appeal these ongoing harassing retaliatory actions.