# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MARY LOUISE ALLEN, | ) | CASE NOS.:  5:17CV02706 (**Lead Case**) |
| | ) | 5:18CV00464 |
| Plaintiff, | ) | 5:18CV01545 |
| | ) | |
| v. | ) | JUDGE PAMELA A. BARKER |
| | ) | |
| STARK STATE COLLEGE, *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | (Resolves Doc. Nos. 64, 71 ) |

Pending before this Court[1] is Motion of Defendants for an Order Dismissing Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 41(b). (Doc. No. 64.)[2]  In response, Plaintiff Mary Louise Allen ("Allen") filed Plaintiff's Opposition to Defendants' Motion to Dismiss for Lack of Prosecution and Failure to Comply with a Court Order Pursuant to Fed. R. Civ. 41(b) and Memorandum in Support. (Doc. No. 71.)

For the foregoing reasons, Defendants' Motion (Doc. No. 64) is GRANTED. Accordingly, this matter is DISMISSED in its entirety, with prejudice, and all other currently pending motions are rendered MOOT by this order.

## I.    Background

On December 29, 2017, Allen initiated her first action against Stark State College and a multitude of individually named defendants asserting claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

---

[1] This matter was originally assigned to District Judge John R. Adams.  It was subsequently reassigned to the undersigned on June 24, 2019 pursuant to General Order 2019-13.

[2] For ease of reference, throughout this Memorandum of Opinion and Order, all citations to the record are from the docket of Case No. 5:17CV02706, unless otherwise noted.

("Title VII") and disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12112, *et seq.* ("ADA"). (Doc. No. 1.)

On February 27, 2018, Allen initiated a second action against Stark State College and various individually named defendants, many of whom were the same individuals named in Allen's December 29, 2017 complaint, asserting claims of gender discrimination and retaliation in violation of Title VII, disability discrimination and retaliation in violation of the ADA, general federal law claims of "retaliation/pay/civil rights/whistleblower/conspiracy/RICO racketeering" and general state law claims of "retaliation/pay/constitutional rights/whistleblower/conspiracy /RICO racketeering." *See Allen v. Stark State College*, No. 18CV00464 (N.D. Ohio Feb. 27, 2018) (Doc. No. 1.)

On June 15, 2018, Attorney David C. Yamada filed a motion to appear on Allen's behalf *pro hac vice* in the instant action, which was granted on July 5, 2018. (Doc. No. 18; Non-Doc. Order dated July 5, 2018)

On July 9, 2018, Allen initiated a third action against Stark State College and a multitude of individually named defendants, many of whom were the same individuals named in Allen's previous two complaints, asserting various claims under 42 U.S.C. § 1983 and a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq.* ("Equal Pay Act"). *See Allen v. Stark State College*, No. 18CV01545 (N.D. Ohio July 9, 2018) (Doc. No. 1.)

On July 23, 2018, the Court ordered consolidation of all three actions and ordered Allen to file an amended complaint to include all causes of action. (Doc. No. 24.) Thereafter, on August 6, 2018, Allen filed her Amended Complaint against Stark State College, Para Jones, Lada Gibson-Shreve, Thomas Chiappini, Andrew Stephan, Danette Lund, Melissa Glanz, Cathy Torgler, Vicki Bittinger, Mark Weldon, Kari Groh, Merle Griff, Jeffery Walters, Jeff Halm, Alice Stephens,

Fonda Williams, and Chris Maurer (hereinafter, collectively, "Defendants") asserting claims of gender discrimination and retaliation in violation of Title VII, disability discrimination and retaliation in violation of the ADA, denial of Constitutional rights in violation of 42 U.S.C. § 1983, and gender-based pay inequality in violation of the Equal Pay Act. (Doc. No. 31.)

On August 20, 2018, Defendants filed a motion to partially dismiss Allen's Amended Complaint. (Doc. No. 34.) Therein, Defendants requested dismissal of all of Allen's claims **except** her claims for failure to provide reasonable accommodations under the ADA as alleged against Stark State College (Count II), retaliation in violation of Title VII as alleged against Stark State College (Count III), retaliation in violation of the ADA as alleged against Stark State College (Count IV), and violations of the Equal Pay Act as alleged against Stark State College (Count X). (*Id.* at 1-2.)

In pleading that Stark State College failed to reasonably accommodate her disability under the ADA (Count II), Allen states: "Plaintiff has been receiving treatment for Complex Post-Traumatic Stress Disorder throughout the time covered by this litigation. Her symptoms have included impairment of major life activities, including, but not limited to, long and severe bouts of depression, fear, and anxiety, interference with eating and sleeping, and negative effects on neurological and brain functioning." (Doc. No. 31 at ¶ 115.) Allen states that because of Stark State College's failure to provide her with a reasonable accommodation for her disability, "she has suffered severe emotional trauma requiring ongoing treatment . . . ." (*Id.* at ¶ 118.)

In pleading both that Stark State College retaliated against her in violation of Title VII (Count III) and the ADA (Count IV), Allen states that because of Stark State College's alleged unlawful retaliatory activity she endured "considerable emotional distress and negative health impacts." (*Id.*

at ¶ 122.) Additionally, in her prayer for relief, among other remedies, Allen requested "compensatory damages for Plaintiff's emotional pain and suffering . . ." (*Id.* at pp. 30-31.)

Then-assigned District Judge Adams held a Case Management Conference ("CMC") on September 6, 2018. (Min. of Proceedings, Sept. 6, 2018; Doc. No. 42.) At the CMC, Judge Adams provided the following instructions regarding discovery, to which Allen acknowledged her understanding:

> THE COURT: . . . I will give you the starting point. The discovery in this case is going to begin with the deposition of Ms. Allen. She will be deposed. And that is going to occur after a reasonable opportunity for the defendants to present requests for production of documents and interrogatories within the confines of the rule.
>
> And so across the board, at this point in time, both sides are now free to engage in paper discovery within the confines of the civil and the local rules . . . .
>
> . . .
>
> . . . I suspect if the deposition is going to be truly effective, then we're probably going to need medical authorizations and releases and the names of all of her treating physicians and doctors, and it's a very, very – I don't particularly find it – let's put it this way. I am uncomfortable directing that be done, but in the face of her claims, there is no alternative. The defendants are entitled to know all of that particular detail, again, the names, addresses, telephone numbers, contact information for all physicians, mental health professionals and others that have treated the plaintiff for the past ten years.
>
> . . .
>
> Counsel for the plaintiff, it will be your duty and your job to immediately obtain that information and then immediately obtain from your client consents, authorizations for the defendants themselves to seek and obtain medical records, all the details they're entitled to, to fully explore the claims of the plaintiff.
>
> . . .
>
> Ms. Allen, you're on the phone. Do you understand the court's directive?

MS. ALLEN: Yes, I do.

THE COURT: Ma'am, I expect – again, I am sorry to be direct. You're the plaintiff in this case, and you've made allegations that are serious in nature and we're going to take them seriously, but you are required at this point to make certain that all the information that you provide is truthful and accurate and detailed as to each and every physician, psychiatrist, psychologist, whoever it might be, medical physician, if you have a family physician, as we call it, primary care practitioner, the names, addresses, telephone numbers, and it would be helpful if you provide the dates of service or the dates you've seen those individuals and your counsel will provide you with the necessary medical authorizations which will be shared with the defendants. And they can seek out those records and obtain them.

If there's anything – again, they're entitled to that information broadly, just based upon the broad nature of these claims. If there's anything in particular that's limited in nature that you think is something that should not be disclosed, then, Counsel, you will have to file a motion under seal and ask me then perhaps, unfortunately, to review in-camera, anything you think is not directly relevant. By way of example, if there's some treatment by a specific type of physician or specific specialist that may not have any direct bearing on the issue, that's kind of the things we can address.

(Doc. No. 45 at Tr. 34-37.) In addition to the verbal directives regarding discovery at the CMC, the Court memorialized the deadlines in a written order stating that at the CMC "Plaintiff was also instructed to provide full and complete medical authorizations dating back 10 years by no later than September 27, 2018." (Doc. No. 42.)

According to various documents contained within the record from both Allen and Defendants, in accordance with the Court's directive at the CMC to begin discovery, Defendants served interrogatories, requests for production of documents, and requests for admissions upon Allen on September 18, 2018. (Doc. No. 43-1 at 2; Doc. No. 46 at 5; Doc. No. 52 at 3; Doc. No. 54 at 2; Doc. No. 72 at 2; Doc. No. 88 at 7.)

While the record clearly demonstrates that Allen received Defendants' written discovery requests, it is also clear that she failed to respond to them. Specifically, Allen cites, over many months, "significant health" issues that she claims prevented her both from (1) complying with the Court's Order to provide properly executed authorizations for release of medical records to Defendants; and (2) responding to Defendants' written discovery requests as required by the Federal Rules of Civil Procedure. (Doc. No. 43-1 at 2-3; Doc. No. 48 at 1; Doc. No. 54 at 3, 6-7.) *See also* Doc. No. 50 at 1-2; Doc. No. 51 at 1-2; Doc. No. 60 at 1; Doc. No. 61 at 1-2; Doc. No. 62 at 1; Doc. No. 63 at 1-2 (status reports from both Allen and Defendants demonstrating that Allen failed to provide Defendants with properly executed authorizations for release of medical records and failed to respond to properly served written discovery requests over multiple months with Allen continually citing health issues as the reason for the lengthy delay).

In addition, despite acknowledging her understanding of the Court's directives regarding discovery and the requirement placed upon her to provide properly executed authorizations for release of medical records to Defendants, Allen almost immediately began requesting that the Court delay discovery and the deadline to provide the medical authorizations until ruling on Defendants' Motion to Partially Dismiss Allen's Amended Complaint, and until Defendants file an Answer. (Doc. No. 43 at 2; Doc. No. 43-1 at 2-5; Doc. No. 48 at 1-2; Doc. No. 54 at 5-6. *See also* Doc. No. 52 at 4 (indicating Allen's counsel requested an agreement from Defendants to stay discovery pending this Court's ruling on Defendants' Motion to Partially Dismiss Allen's Amended Complaint); Doc. No. 54 at 3 (confirming that Allen would not respond to Defendants' written discovery requests by the deadline imposed by the Federal Rules of Civil Procedure and requesting an extension of time to respond until after this Court rules on the pending motion to partially dismiss Allen's Amended Complaint).

Ultimately, the disputes between Allen and Defendants regarding the discovery ordered by the Court culminated in the currently pending Motion of Defendants for an Order Dismissing Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 41(b) and Allen's opposition to Defendants' motion. (Doc. Nos. 64, 71.)

During the time the Court considered the arguments contained in the pertinent pending motions, Allen began engaging in voluminous and superfluous motion practice and submitted a litany of lengthy, miscellaneous filings, despite the multiple filings over multiple months alleging that health issues and personal difficulties prevented her from participating in the discovery ordered by the Court. (Doc. Nos. 65, 68, 77, 78, 86, 87, 89, 90.) *See also* Doc. No. 80; Doc. No. 84 (Reply briefing consisting of a total of sixty-one pages with attachments). Of note, this activity began contemporaneously with a motion by Allen's counsel to withdraw, which was ultimately granted. (Doc. No. 69.)

Given the ongoing discovery issues, and the request from Allen's counsel to withdraw from the case, on March 1, 2019, the Court scheduled a status conference for April 11, 2019. (Doc. No. 70.) The notification of the status conference clearly stated "[a]ll counsel and parties to attend." (*Id.*) This notice initiated a separate deluge of motion practice and filings from Allen.

On March 5, 2019, Allen requested to appear at the status conference by telephone. (Doc. No. 73.) This request was immediately denied, with the reminder and clarification that "[a]ll counsel and parties are to attend the April 11, 2019 Status Conference in person." (Doc. No. 74.) Undeterred, Allen continued to file further requests to either attend the scheduled status conference by telephone or delay the status conference. (Doc. Nos. 79, 83.) These requests were also denied. (Doc. No. 82; Doc. No. 85 at 4.)

In fact, in denying Allen's request to delay the April 11, 2019 status conference, the Court stated that "[t]he parties are placed on notice that, absent leave of court, attendance by the parties and counsel at the status conference is mandatory. Failure to attend the status conference may result in sanctions, up to and including dismissal of the complaint or affirmative defenses to the complaint." (Doc. No. 85 at 4.)

Once again, despite this direct order, two days before the status conference, Allen embedded in one of her extensive, miscellaneous filings another request to postpone the April 11, 2019 status conference. (Doc. No. 86 at 19.) On April 11, 2019, Allen failed to attend the scheduled status conference as directed by this Court. *See* Min. of Proceedings, Apr. 11, 2019.[3]

In addition to Allen's clear disregard for the Court's order that she appear for the April 11, 2019 status conference in person, it is the Court's understanding that to date, approximately eight months after being directed by the Court to do so, Allen has still failed to either provide properly executed authorizations for release of medical records to Defendants or meaningfully participate in discovery for this case. *See* Doc. No. 72 at 2 (stating that as of March 5, 2019, Allen had not produced signed authorizations for release of medical records or responded to any of Defendants' written discovery requests); Doc. No. 81 at 1-2 (stating that as of March 25, 2019, ". . . Defendants have received no discovery to date . . . despite the fact that this case has now been pending for well over one year"); Doc. No. 88 at 8 (stating that as of April 10, 2019, Allen "has thus far failed to respond to any discovery . . .").

## II.    Law and Argument

### A.    Procedural Decisions of This Court

---

[3] On April 10, 2019, Allen filed a Notice of Appeal to the Sixth Circuit from, among other things, the Court's Order requiring her to attend the status conference in person.  (Doc. No. 87.)  On July 16, 2019, the Sixth Circuit dismissed Allen's appeal for lack of jurisdiction on the grounds that "[n]o final appealable order terminating all of the issues presented in the litigation has been entered by the district court."  (Doc. No. 92.)

In her numerous filings, it is clear that Allen takes issue with the procedural timeline of her case. The crux of Allen's displeasure regarding how her case has progressed appears to be that she believes the Court improperly scheduled the CMC prior to ruling on Defendants' Motion to Partially Dismiss her Amended Complaint, and that the Court improperly ordered discovery to proceed, including the requirement that Allen provide properly executed authorizations for the release of her medical records, before Defendants filed an Answer. *See, e.g.*, Doc. No. 43 at 2 ("Plaintiff asks the Court for time to secure her medical records and to conduct discovery once the Court has determined, via its ruling on Defendants' Motion to Dismiss . . ., what claims are subject to discovery" and "Plaintiff also asks this Court to amend the discovery plan, whereupon discovery commences when the Defendant serve [sic] their Answer"); Doc. No. 43-1 at 2 ("Plaintiff raises concerns that this broad discovery directive concerning her medical records may compromise her rights under discovery rules and unnecessarily expose personal health and medical information unrelated to her claims for relief, especially given that the pendency of Defendants' Motion to Dismiss means that the legal allegations that will be subject to discovery may be subject to change" and "Plaintiff respectfully objects to having to address important discovery matters before the Court's ruling on Defendants' pending Motion to Dismiss and service of an Answer to Plaintiff's First Amended Complaint . . . clarifies the factual and legal matters subject to discovery"); Doc. No. 65 at 8 (arguing, incorrectly, that this Court's Civil Practice and Procedures dictate that a CMC is only held after an Answer has been filed without acknowledgment of the Federal Rules of Civil Procedure and the authority they afford this Court regarding scheduling conferences). Allen has a clear misunderstanding of the Federal Rules of Civil Procedure and the authority of the Court – a misunderstanding the Court will now address.

First, with respect to the CMC, the Court is required, per the rules, to hold an initial scheduling conference as soon as possible, regardless of whether an answer or pre-answer motion is filed. Fed. R. Civ. P. 16(b).  In fact, pursuant to the rules, "[t]he judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared." Fed. R. Civ. P. 16(b)(2). The rules make no mention of a requirement that the Court rule on pending motions or that Defendants file an answer before the Court conducts a CMC.  Therefore, scheduling the CMC prior to ruling on Defendants' Motion to Partially Dismiss Allen's Amended Complaint was not improper and was well-within the Court's discretion.

With respect to ordering discovery to begin, including the imposition of the requirement that Allen provide properly executed authorizations for the release of her medical records before Defendants had filed an Answer, once again, this was well-within the discretion of the Court as contemplated by the rules and common law. Pursuant to the rules, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1).  In other words, the parties were not permitted to begin the discovery process before conferring with each other prior to the CMC.  However, at the time the Court held the CMC, the parties had conferred and submitted their Report of Parties' Planning Meeting, as required by Fed. R. Civ. P. 26(f)(3). (Doc. No. 39.)  Therefore, it was well within the Court's discretion to order that discovery proceed after the CMC as all the requirements of the Federal Rules of Civil Procedure had been met.

More importantly, in order to properly manage the progress of a case and maintain control over its docket, the Court has "broad discretion under the rules of civil procedure to manage the

discovery process and control [its] docket[]." *Marie v. Am. Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)). The broad discretion afforded the Court provides it the power "to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

Because Allen put her health, both physical and mental, directly at issue in this litigation, it was not unreasonable for the Court to order that she provide properly executed authorizations for release of her medical records to Defendants – and notably, this is common practice in the federal courts. *See, e.g.*, *Maday v. Pub. Libraries*, 480 F.3d 815, 821 (6th Cir. 2007) (holding that evidentiary privilege of mental health information is waived when plaintiff put her "emotional state at issue in the case"); *In re Zuniga*, 714 F.2d 632, 637 (6th Cir. 1983) ("[t]here is no privilege . . . as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which [s]he relies upon the condition as an element of [her] claim or defense"). *See also McMullen v. Reserves Network, Inc.*, 2013 U.S. Dist. LEXIS 13304 at *2-3 (N.D. Ohio Jan. 31, 2013) (explaining that emotional distress claims in an employment discrimination lawsuit waive any privilege because these claims put medical and mental conditions at issue, resulting in the need for plaintiff to provide medical releases for all of her providers, "as it has long been the practice of federal courts to direct plaintiffs to provide authorizations so that defense counsel may obtain pertinent records directly from health care providers"); *Mirtes v. Norfolk S. Ry.*, 2005 U.S. Dist. LEXIS 34935 at *1 (N.D. Ohio Dec. 22, 2005) ("Courts routinely direct plaintiffs to provide authorizations so that defense counsel may obtain pertinent records directly from health care providers.").

Although Allen argues in her litany of filings that ruling on Defendants' Motion to Partially Dismiss her Amended Complaint would alter the scope of discovery, she is incorrect. Because

Defendants did not move to dismiss her claims for failure to provide reasonable accommodations under the ADA and retaliation in violation of both Title VII and the ADA, both the physical and mental components of Allen's alleged disability, as well as her broadly pled "considerable emotional distress and negative health impact[]" damages, squarely place Allen's physical and mental health at issue in this litigation regardless of the Court's ruling on Defendants' Motion to Partially Dismiss her Amended Complaint.

Allen cannot, on the one hand, seek millions of dollars in damages for alleged sustained mental and physical health impacts due to the actions of Defendants, while on the other hand argue that she should not have to provide properly executed authorizations for release of medical records which would set forth the parameters of her disability and the damages she claims. Therefore, it was not outside the scope of the Court's discretion to order that discovery proceed at the time and in the manner in which the Court ordered it so.

Finally, with respect to the status conference that the Court scheduled for April 11, 2019, requiring Allen's participation and physical presence, this Court is permitted, per the rules, to schedule one or more pre-trial conferences at its discretion. Fed. R. Civ. P. 16(a) ("In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences . . ."). Despite Allen's protests that she should not be required to personally attend the status conference in the court in which she initiated this action, it was squarely within the discretion of the Court to order her to do so.

Given all of the foregoing, the Orders of the Court to conduct a CMC, hold a status conference, and allow the parties to begin the discovery process, including requiring Allen to provide properly executed authorizations for the release of medical records, are contemplated by the Federal Rules of Civil Procedure, the common law, and were properly ordered. Therefore, Allen's

misunderstandings regarding the procedural timeline of her case do not affect the remainder of the analysis as to whether Allen's First Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 41(b).

**B.**         **Standard of Review – Dismissal Pursuant to Fed. R. Civ. P. 41(b)**

Federal Rule of Civil Procedure 41(b) allows for the involuntary dismissal of an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order," where the involuntary dismissal "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). An involuntary dismissal under Federal Rule of Civil Procedure 41(b) "is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts [and] opposing parties." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (quoting *Matter of Sanction of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984) (internal quotation marks omitted) (alteration in original)). "Determining whether dismissal is the appropriate sanction is a matter within the discretion of the district courts." *Jackson v. Sterilite Corp.*, 2014 U.S. Dist. LEXIS 147667 at *5 (N.D. Ohio Oct. 16, 2014) (citing *Wright v. Coca-Cola Bottling Co.*, 41 F. App'x 795 (6th Cir. 2002)).

When determining whether dismissal pursuant to Federal Rule of Civil Procedure 41(b) is appropriate, this Court must assess four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001) (citations omitted). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). Where "[c]ontumacious

conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (citations and internal quotation marks omitted).

These factors allow this Court to balance "the court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims." *Wingate v. Wal-Mart Stores, Inc.*, 2017 U.S. Dist. LEXIS 51161 at *9 (N.D. Ohio Mar. 14, 2017) (quoting *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993) (internal quotation marks omitted)).

**C**.       **Discussion**

1.  *Willfulness, Bad Faith, or Fault*

When analyzing the first factor (i.e., whether Allen's failure to comply with Court Orders and the Federal Rules of Civil Procedure was willful or in bad faith), this Court looks to Allen's conduct to determine if it displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on those proceedings." *Wu v. T.W. Wang*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Mulbah*, 261 F.3d at 591 (internal quotation marks omitted)). Accordingly, "the burden of showing that a failure to comply with court orders and discovery requests was due to inability, not willfulness or bad faith, rests with the individual against whom sanctions are sought." *Jackson*, 2014 U.S. Dist. LEXIS 147667 at *6 (citing *United States v. Reyes*, 307 F.3d at 458). Therefore, "it is presumed that dismissal is not an abuse of discretion if the party has the ability to comply with a discovery order but does not." *Id.* (quoting *United States v. Reyes*, 307 F.3d at 458 (internal quotation marks omitted)).

Because Allen was represented by an attorney when she initially failed to comply with the Orders of the Court and the Federal Rules of Civil Procedure, it is important to recognize that

involuntarily dismissing this action "merely to discipline an errant attorney to the detriment of an innocent client" is inappropriate. *Mager v. Wis. Central, Ltd.*, 2019 U.S. App. LEXIS 14364 at *10 (6th Cir. May 15, 2019) (quoting *Knoll*, 176 F.3d at 363 (internal quotation marks omitted)). In fact, the Sixth Circuit has instructed that "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Carpenter*, 723 F.3d at 704 (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) (internal quotation marks omitted) (alteration in original)).

However, it is also important to recognize that Allen continued to fail to comply with the Court's Orders and the Federal Rules of Civil Procedure even after her attorney withdrew from this case. It is well-established that Allen's *pro se* status does not excuse her from participating in the discovery process or complying with Court orders. *See Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 458 (S.D. Ohio 2012) (citing *In re Family Resorts of America, Inc.*, 1992 U.S. App. LEXIS 18400 at *8 (6th Cir. July 24, 1992)). Although "*pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe*, 951 F.2d 108, 109 (6th Cir. 1991). A *pro se* litigant should not be given any special consideration when she fails to abide by "readily comprehended court deadlines of which [she is] well-aware." *Id.* at 110. "[C]ases filed by *pro se* plaintiffs may still be subject to dismissal if the plaintiff fails to meet court orders." *Wingate*, 2017 U.S. Dist. LEXIS 51161 at *9 (citing *McConnell v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 71051 at *3 (N.D. Ohio Apr. 1, 2014)). Even when proceeding *pro se*, Allen must still follow the Federal Rules of Civil Procedure and basic procedural obligations. *See Fields v. Cty. of Lapeer*, 2000 U.S. App. LEXIS 29182 at *5 (6th Cir. Nov. 8, 2000) (quoting *Bradenburg v. Bearman*, 632

F.2d 120, 122 (10th Cir. 1980) ("it is incumbent on litigants, even those proceeding pro se, to follow the . . . rules of procedure.")).

Given this landscape, Allen's blatant disregard for the Orders of this Court and her discovery responsibilities pursuant to the Federal Rules of Civil Procedure can only be described as willful and in bad faith. To be clear, Allen, both while represented by counsel and proceeding *pro se*, has refused to comply with the following: (1) the Court's Order to provide properly executed authorizations for release of medical records to Defendants; (2) the Court's Order to begin and participate in the discovery process; (3) the Court's Order to attend, in person, a status conference; and (4) the Federal Rules of Civil Procedure regarding paper discovery and applicable deadlines.[4]

Allen's arguments against having to comply with Court Orders and her discovery obligations range from "significant health" and personal issues, to requests that the Court delay discovery and the deadline to provide the medical authorizations until ruling on Defendants' Motion to Partially Dismiss Allen's Amended Complaint, and until Defendants file an Answer. Allen's arguments, however, are fundamentally flawed, as fully analyzed above. What Allen fails to appreciate is that because she filed this lawsuit in this Court she has obligations to this Court and the opposing parties, regardless of her misunderstanding of federal procedure and her mistaken belief that Court Orders should not apply to her.

The Court's Orders that Allen provide properly executed authorizations for release of medical records to Defendants and participate in the discovery process have been languishing for over eight months without any cooperation from Allen. Allen has steadfastly refused to provide Defendants

---

[4] The Court also notes that Allen has failed to comply with the Court's Order that she cease emailing Court personnel. Specifically, on April 2, 2019, the Court ordered as follows: "Finally, Allen is instructed that her frequent email communications to the Court's law clerk and other related staff shall CEASE IMMEDIATELY." (Doc. No. 85 at 4.) Nonetheless, despite this clear directive, Allen emailed numerous Court personnel on July 18, 2019.

with any discovery materials. Furthermore, in direct disobedience of the Federal Rules of Civil Procedure, Allen has failed to respond at all to Defendants' properly served written discovery requests for over eight months. Allen has openly defied the Orders of this Court and the deadlines established by the Federal Rules of Civil Procedure – obligations that Allen herself acknowledged an understanding of directly to the Court during the CMC.

Allen's willful disregard for Court Orders and the Federal Rules of Civil Procedure is made clear through Allen's voluminous filings. Despite Allen's contention that her personal and health issues prevent her from participating meaningfully in the progress of this case, Allen has been able to file a litany of lengthy, voluminous, miscellaneous documents with this Court. Thus, it is clear that Allen **is able** to comply with the orders of this Court, but she is actively **choosing not to** comply.[5]

Even if the Court were to put aside Allen's defiance regarding discovery, Allen openly disregarded a direct Order to attend a status conference in person. This defiance is nothing less than willful. Given Allen's multiple attempts to either postpone the status conference or attend remotely, it is clear that Allen knew when the status conference was scheduled and that she was required to attend. Despite this knowledge, Allen failed to attend the status conference in person.

In light of the above, the Court finds that Allen's conduct throughout the pendency of her case displays "either an intent to thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on those proceedings." *See Wu*, 420 F.3d at 643. Once again, Allen's misunderstandings regarding federal practice and procedure do not save her. Allen has had

---

[5] The Court acknowledges Allen's claim that she is unable to comply with the Court's Orders in this matter due to her Complex PTSD, and has reviewed and considered the various letters submitted by her therapist to that effect. *See, e.g.*, Doc. No. 27-2; Doc. No. 27-3; Doc. No. 32-3; Doc. No. 43-2; Doc. No. 48-1; Doc. No. 73 at 4; Doc. No. 79 at 14. However, the Court notes that , despite her symptoms, Allen has nonetheless been able to participate in these proceedings when it suits her do to so, as evidenced by her numerous filings since withdrawal of counsel.

multiple opportunities over many months to engage in good faith with the Court and Defendants to move this case forward, but her obstinance regarding discovery and attending a mandatory status conference make this factor weigh in favor of dismissal. *See, e.g.*, *Jackson.*, 2014 U.S. Dist. LEXIS 147667 at *8 (stating that "[p]laintiff's complete failure to participate in discovery can only be construed as demonstrating bad faith and/or willful intent to unduly delay resolution of these actions"); *Robinson v. Gen. Motors Corp.*, 2013 U.S. Dist. LEXIS 39814 at *6-7 (N.D. Ohio Mar. 13, 2013) (maintaining that plaintiff's failure to respond to discovery requests and failure to appear at a status conference indicates evidence of willfulness and fault). For all of these reasons, the first factor strongly weighs in favor of dismissing Allen's case, with prejudice.

2. *Prejudice Suffered Due to Allen's Conduct*

In analyzing this second factor, the Court must consider that "a defendant is prejudiced by the plaintiff's conduct where the defendant waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (internal quotation marks omitted) (alterations in original)). Allen's unwillingness to participate in the litigation she initiated has caused prejudice to Defendants as Defendants have been forced to spend time and resources encouraging Allen to participate in the obligations associated with litigation, namely discovery. In addition, Defendants have been forced to respond to Allen's numerous, voluminous, miscellaneous and repetitive filings. *See Harmon*, 110 F.3d at 368 ("We have no doubt that [defendant] was prejudiced by [plaintiff's] failure to respond to its interrogatories. Not only had [defendant] been unable to secure the information requested, but it was also required to waste time, money, and effort in pursuit of cooperation which [plaintiff] was legally obligated to provide."); *Jackson*, 2014 U.S. Dist. LEXIS 147667 at *9 ("There can be no

question that this unwillingness to participate in litigation has resulted in prejudice to defendants, as they have been required to waste valuable time and resources attempting to get plaintiff to meet his discovery obligations."); *Robinson*, 2013 U.S. Dist. LEXIS 39814 at *8 ("Defendant has been prejudiced by its waste of time, money, and effort in attempting to get plaintiff to meet her discovery obligations and by having to defend a case in which plaintiff refuses to meaningfully participate.").

Once again, Allen's discovery obligations have sat idle for over eight months. Defendants have attempted to engage with Allen and her counsel in order to secure the information they are entitled to in order to mount a proper defense to Allen's claims, but Allen has blocked every effort made by Defendants, even going so far as to decline a very reasonable offer by Defendants to provide Allen with an extension to respond to Defendants' discovery requests. This persistent obstinance and refusal to meaningfully participate in the case that she initiated clearly prejudices Defendants. *See, e.g.*, *Wilson v. Kaley*, 2012 U.S. Dist. LEXIS 43362 at *5 (N.D. Ohio Mar. 29, 2012) (stating that defendants are prejudiced by plaintiff's failure to participate in the discovery process because "[p]laintiff initiated this lawsuit and defendants are entitled to discovery permitted under the federal civil rules in order to defend against plaintiff's claims. Even though plaintiff is proceeding *pro se*, he still must comply with the federal civil rules and obey the Court's orders. Plaintiff's failure to provide the requested documents and to appear at his deposition renders defendants unable to complete discovery and advance a defense in this case."). For these reasons, the second factor weighs heavily in favor of dismissing Allen's claims with prejudice.

3. *Warnings to Allen Regarding Failing to Cooperate*

With respect to Allen's discovery obligations under the Federal Rules of Civil Procedure and this Court's Order requiring Allen to provide properly executed authorizations for release of

medical records to Defendants, the Court recognizes that Allen was not expressly warned by this Court that a continued failure to comply with discovery obligations could lead to dismissal of her case. However, when "a plaintiff has not been given notice that dismissal is contemplated, a district court should impose a penalty short of dismissal **unless the derelict party has engaged in bad faith or contumacious conduct**." *Harmon*, 110 F.3d at 367 (quoting *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988) (internal quotation marks omitted) (emphasis added)).

As discussed at length above, it is clear from the record that Allen's conduct was contumacious and in bad faith. Allen deliberately defied Orders of this Court regarding discovery, despite her verbal acknowledgment and understanding of the requirements placed upon her. Therefore, lack of prior warning should not prevent dismissal of this action. Moreover, the record reflects the Court did warn Allen that a failure to attend the status conference in person, as ordered by this Court, could result in a dismissal of her claims. (Doc. No. 85 at 4.) Despite this warning, Allen did not attend the status conference in direct defiance of a Court Order. Therefore, dismissal of Allen's claims, with prejudice, is not an inappropriate sanction as a consequence of Allen's actions.

### 4. *Consideration of Less Drastic Sanctions*

Finally, with respect to this final factor, it is unlikely that lesser sanctions would have any effect on Allen's conduct. When considering lesser sanctions, this Court must exercise "particular caution in the absence of contumacious conduct." *Harmon*, 110 F.3d at 368 (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997) (internal quotation marks omitted)). However, when "[p]resented with a record of sufficiently egregious conduct . . . a district court has not abused its discretion by ordering dismissal as the first and only sanction." *Harmon*, 110 F.3d at 369.

As fully analyzed above, the record supports the conclusion that Allen's conduct is nothing short of contumacious, allowing this Court to dismiss Allen's claims, with prejudice, as a first and

only sanction. Once again, as a prime example, Allen was warned that a failure to comply with this Court's Order could result in sanctions, including dismissal, but that did not stop Allen from ignoring this Court's Order to attend a status conference in person. Allen's actions demonstrate a lack of respect for this Court and its Orders as well as the rules of procedure that all litigants must follow. For these reasons, dismissal of Allen's claims, with prejudice, is the only appropriate sanction as a consequence of Allen's actions.

## III.    Conclusion

For the foregoing reasons, the pending Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 41(b) (Doc. No. 64) is GRANTED. Accordingly, this case is DISMISSED in its entirety, with prejudice. All other currently pending motions are rendered MOOT by this order and decision.

IT IS SO ORDERED.


DATE: July 26, 2019                              */s/ Pamela A Barker*_____
                                                 Judge Pamela A. Barker
                                                 UNITED STATES DISTRICT COURT