# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Mary Louise Allen, | Case No. 5:17cv2706 (Lead Case) |
| | 5:18cv464 |
| Plaintiff, | 5:18cv1545 |
| -vs- | |
| | **JUDGE PAMELA A. BARKER** |
| Stark State College, et al., | |
| | **MEMORANDUM OPINION & ORDER** |
| Defendants | |

Currently pending is *pro se* Plaintiff Mary Louise Allen's "Motion to Vacate Unconstitutional Orders based upon Serious Crimes/Frauds upon the Court/Due Process Concerns/Abuse of Discretion and Memorandum in Support Thereof." (Doc. No. 99.) Defendants filed a Brief in Opposition on August 23, 2019 (Doc. No. 105), to which Plaintiff responded on August 29, 2019 (Doc. No. 106). For the following reasons, Plaintiff's Motion to Vacate (Doc. No. 99) is DENIED.

## I. Relevant Procedural History

The procedural history of this matter is set forth in detail in this Court's July 26, 2019 Memorandum Opinion & Order and will not be repeated in full herein. Rather, the Court will recite only that background necessary for a resolution of the instant motion.

On August 6, 2018, Plaintiff (who was then represented by counsel) filed a First Amended Complaint against Defendants Stark State College, Para Jones, Lada Gibson-Shreve, Thomas Chiappini, Andrew Stephan, Danette Lund, Melissa Glanz, Cathy Torgler, Vicki Bittinger, Mark Weldon, Kari Groh, Merle Griff, Jeffery Walters, Jeff Halm, Alice Stephens, Fonda Williams, and Chris Maurer (hereinafter referred to collectively as "Defendants"). (Doc. No. 31.) Therein, Plaintiff asserted claims for gender discrimination and retaliation in violation of Title VII; disability

discrimination and retaliation in violation of the ADA; denial of constitutional rights under 42 U.S.C. § 1983; and gender-based pay inequality in violation of the Equal Pay Act. (*Id.*) Among other things, Plaintiff sought compensatory damages for health care coverage and emotional pain and suffering, as well as punitive damages. (*Id.* at p. 30-31.) Throughout the Amended Complaint, Plaintiff asserted that, as a result of Defendants' actions, she had suffered significant emotional distress and health impairments. *See* Doc. No. 31 at ¶¶ 1, 104, 118, 122, 126, 134, 139, 145.

On August 20, 2018, Defendants filed a Motion to Partially Dismiss Plaintiff's Amended Complaint. (Doc. No. 34.) In that Motion, Defendants sought dismissal of all of Plaintiff's claims except her claims against Stark State College for failure to provide reasonable accommodation under the ADA (Count II); retaliation in violation of both Title VII and the ADA (Counts III and IV); and violation of the Equal Pay Act (Count X). In these reasonable accommodation and retaliation counts (i.e., Counts II, III, and IV), Plaintiff alleges that "as a direct and proximate result" of Defendant's conduct, Plaintiff has "suffered severe emotional trauma requiring ongoing treatment and loss of income and benefits" (Count II) and "endure[d] considerable emotional distress and negative health impacts" (Counts III and IV). (Doc. No. 31 at ¶¶ 118, 122, 126.)

Then-assigned District Judge John Adams set a Case Management Conference ("CMC") for September 6, 2018. (Doc. No. 30.) Plaintiff (through her counsel) later moved to attend telephonically, which motion was granted on August 20, 2018. (Doc. No. 33.) At the CMC, Judge Adams discussed several issues relating to discovery. He indicated that "discovery in this case is going to begin with the deposition of Ms. Allen," and stated that, in order for this deposition to be productive, Defendants would first have a reasonable opportunity to present requests for production of documents and interrogatories. (Doc. No. 45 at Tr. 34-37.) Judge Adams further stated that, in

2

light of the nature of Plaintiff's allegations and alleged damages, she was required to provide medical authorizations and releases, as well as the names of her treating physicians and doctors, to counsel for Defendants. (*Id.*) He further stated that "across the board, at this point in time, both sides are now free to engage in paper discovery within the confines of the local rules." (*Id.*) Judge Adams later memorialized the above in a written Order dated September 24, 2018, in which he stated that "Plaintiff was instructed to provide full and complete medical authorizations dating back 10 years by no later than September 27, 2018." (Doc. No. 42.)

Defendants thereafter served written discovery requests and requests for production of documents on Plaintiff on September 18, 2018. (Doc. No. 50.) Plaintiff failed to respond, prompting Defendants to file a "Motion for Order deeming Requests for Admissions admitted" and a Notice of Discovery Dispute. (Doc. Nos. 52, 58.) The record reflects Plaintiff also failed to comply with Judge Adams' Order directing her to provide medical authorizations, citing "significant health issues" that prevented her from complying. Contemporaneously, Plaintiff also filed numerous pleadings requesting the Court delay both discovery and the deadline to provide medical authorizations until ruling on Defendants' Motion to Partially Dismiss. Plaintiff's Motions were denied.

On January 31, 2019, Defendants filed a Motion to Dismiss for Lack of Prosecution and Failure to Comply with a Court Order pursuant to Fed. R. Civ. P. 41(b). (Doc. No. 64.)

Several weeks later, Plaintiff filed a *pro se* Motion to Disqualify Judge Adams. (Doc. No. 65.) She also filed a *pro se* Request for Entry of Default Judgment against Defendants. (Doc. No. 68.) Shortly thereafter, Plaintiff's counsel moved to withdraw. (Doc. No. 67.) Judge Adams granted counsel's Motion to Withdraw and allowed Plaintiff 30 days to obtain new counsel. (Doc. No. 69.) He also set an in-person status conference for April 11, 2019. (Doc. No. 70.)

3

Plaintiff did not obtain new counsel. Rather, she proceeded to represent herself, filing a *pro se* Brief in Opposition to Defendants' Motion to Dismiss pursuant to Rule 41(b) (Doc. No. 71) and a Motion to appear telephonically at the April 11, 2019 conference (Doc. No. 73.) Judge Adams denied the Motion to appear telephonically, advising that: "All counsel and parties are to attend the April 11, 2019 Status Conference in person. All pending deadlines are stayed until the April 11, 2019 Status Conference." (Doc. No. 74.) Plaintiff thereafter filed a Motion for Reconsideration, which was opposed by Defendants and denied. (Doc. Nos. 79, 81, 82.) She went on to file a Motion to postpone the Status Conference. (Doc. No. 83.)

On April 2, 2019, Judge Adams denied Plaintiff's Motion to Disqualify and her Motion to Postpone the April 11, 2019 Status Conference. (Doc. No. 85.) In this Order, Judge Adams specifically warned Plaintiff that "[f]ailure to attend the status conference may result in sanctions, up to and including dismissal of the complaint." (*Id*. at 4.) He also instructed Plaintiff to immediately cease "her frequent email communications to the Court's law clerk and other related staff." (*Id.*) Judge Adams advised Plaintiff that "if [she] should seek guidance on substantive issues, she must do so through a formal filing with the Court." (*Id*.)

Plaintiff filed a Notice of Appeal of Judge Adams' Orders denying her Motion for Disqualification and Motion for Reconsideration to appear telephonically at the Status Conference. (Doc. No. 87.) The Sixth Circuit later dismissed the appeal for lack of jurisdiction. (Doc. No. 92.)

Plaintiff failed to appear for the April 11, 2019 Status Conference, despite Judge Adams' clear Order that she do so and despite his express warning that her failure to appear could result in dismissal of the instant action.

On April 29, 2019, Plaintiff filed another Application to the Clerk for Entry of Default Judgment against Defendants. (Doc. No. 90.) She also filed a Motion seeking permission to file electronically. (Doc. No. 91.)

Two months later, on June 24, 2019, this matter was re-assigned to the undersigned pursuant to General Order 2019-13. Several weeks later, the Court denied Plaintiff leave to file electronically. (Doc. No. 94.)

The following month, on July 26, 2019, the Court issued a Memorandum Opinion & Order granting Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b). (Doc. No. 96.) Therein, the Court expressly addressed and rejected Plaintiff's arguments that it was procedurally improper for Judge Adams to have (1) conducted the CMC prior to ruling on Defendants' Motion for Partial Dismissal; (2) ordered Plaintiff to prove medical authorizations and releases to counsel for Defendants; (3) scheduled the April 11, 2019 Status Conference; and (4) required Plaintiff to attend that Status Conference in person. (*Id*.)

The Court then went on to evaluate whether dismissal was appropriate under Rule 41(b), applying the four factors set forth in *Mulbah v. Detroit Bd. of Educ*., 261 F.3d 586, 589 (6th Cir. 2001). The Court first determined that Plaintiff's "blatant disregard for the Orders of this Court and her discovery responsibilities pursuant to the Federal Rules of Civil Procedure can only be described as willful and in bad faith." (*Id*. at p. 16.) The Court recognized Plaintiff's arguments regarding her significant health issues (as well as letters submitted on her behalf by her therapist) but noted that, despite her symptoms, she "has nonetheless been able to participate in these proceedings when it suits her to do so, as evidenced by her numerous filings since withdrawal of counsel." (*Id*. at fn 17.) The Court then determined that Defendants had been prejudiced by Plaintiff's failure to obey Court Orders

5

or engage in discovery, and that lesser sanctions were unlikely to have any effect on her future conduct. (*Id*. at pp. 18-21.) Finally, the Court noted that Plaintiff had been expressly warned that her failure to appear at the April 11, 2019 Status Conference could result in dismissal of the instant action and, yet, she nonetheless failed to appear for that Conference. (*Id*. at pp. 19-20.) Accordingly, the Court granted Defendants' Motion and dismissed the case.

On that same date, the Court issued an Order noting that, despite Judge Adams' previous Order that Plaintiff cease emailing Court staff, Plaintiff had continued to directly email various Court personnel. (Doc. No. 95.) The Court ordered Plaintiff to immediately cease any and all email communication with Court personnel and staff and expressly warned her that failure to comply with this directive might result in sanctions, including but not limited to the imposition of a fine and/or a restriction on filing any documents in this Court without leave. (*Id*.)

On July 29, 2019, Plaintiff filed a Notice of Appeal to the Sixth Circuit from this Court's Judgment Entry dismissing the case. (Doc. No. 98.) She later filed separate Notices of Appeal referencing the Court's July 26, 2019 Memorandum Opinion & Order granting Defendants' Motion to Dismiss as well as the Court's Order directing her to cease emailing Court personnel, which the Sixth Circuit dismissed as duplicative of her original Notice of Appeal. (Doc. Nos. 101, 107, 104, 109.)

Meanwhile, Plaintiff filed a Motion to Vacate this Court's July 26, 2019 Memorandum Opinion & Order. (Doc. No. 99.) Defendants filed a Brief in Opposition on August 23, 2019, to which Plaintiff responded. (Doc. Nos. 105, 106.) The Sixth Circuit determined that Plaintiff's appeal would be held in abeyance pending this Court's ruling on Plaintiff's Motion to Vacate. (Doc. No. 102.)

Thus, this matter is now ripe and ready for resolution.

**II.     Standard of Review**

Plaintiff does not state whether her "Motion to Vacate" is filed under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b).  A court may grant a motion to amend or alter judgment under Rule 59(e) if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice.  *See Brumley v. United Parcel Service, Inc.,* 909 F.3d 834, 841 (6th Cir. 2018); *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'"  *McConocha v. Blue Cross & Blue Shield Mut. of Ohio*, 930 F.Supp. 1182, 1184 (N.D. Ohio 1996).[1]  *See also Brumley*, 909 F.3d at 841.  Motions to alter or amend under this Rule are extraordinary and should be sparingly granted.  *See Cequent Trailer Products, Inc. v. Intradin (Shanghai) Machinery Co., Ltd.*, 2007 WL 1362457 at * 2 (N.D. Ohio May 7, 2007); *Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc.*, 904 F.Supp. 644, 669 (N.D. Ohio 1995).

Plaintiff's "Motion to Vacate" could also be interpreted as seeking relief from the Court's July 26, 2019 Memorandum Opinion & Order pursuant to Fed. R. Civ. P. 60(b).  "The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion."  *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264, 268 (6th Cir. 1998).  *See also Lemons v. Watkins,*

---

[1] *See also Gascho v. Global Fitness Holdings, LLC*, 918 F.Supp.2d 708, 715 (S.D. Ohio Jan. 16, 2013) ("A motion for reconsideration or to alter or amend is not a vehicle to reargue the case or to present evidence which should have been raised in connection with an earlier motion."); 11 Charles Alan Wright, Arthur Miller and Mary Kay Kane, Federal Practice and Procedure, § 2810.1 (2d ed. 1995) (motions to alter or amend judgment cannot be used to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment.").

2017 WL 4810708 at * 1 (N.D. Ohio Oct. 24, 2017); *Board of Trustees of Toledo Roofers Local No. 134 Pension Plan v. Enterprise Roofing & Sheet Metal Co*., 2014 WL 988851 at * 2 (N.D. Ohio March 13, 2014). A court may provide relief under Rule 60(b)(1) in instances of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Sixth Circuit has explained that a motion for relief under Rule 60(b)(1) is intended to provide relief to a party in only two instances: "(1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). *See also United States v. Rohner*, 634 Fed. Appx. 495, 506 (6th Cir. Dec. 11, 2015). Therefore, a "claim of legal error in the underlying judgment falls within the definition of mistake under Rule 60(b)(1)." *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) (citing *Pierce v. United Mine Workers of Am., Welfare & Ret. Fund for 1950 & 1974*, 770 F.2d 449, 451 (6th Cir. 1985)). *See also Barrier v. Beaver*, 712 F.2d 231, 234-35 (6th Cir. 1983) (allowing a motion for reconsideration to correct a court's mistake of law and recognizing that Rule 60(b)(1) allows for correcting the court's mistakes or errors).

Alternatively, a court may apply Rule 60(b)(6) to provide relief under "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). A court's application of Rule 60(b)(6) requires "exceptional and extraordinary circumstances" warranting relief in the absence of an appeal on the merits. *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989). As the Sixth Circuit has explained, Rule 60(b) does not afford litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof. *See Jinks v. Allied Signal, Inc.,*

8

250 F.3d 381, 385 (6th Cir. 2001). *See also Arsan v. Keller*, 2019 WL 3494330 at * 12 (6 th Cir. Aug. 1, 2019).

**III. Analysis**

In her Motion, Plaintiff argues the Court improperly dismissed the instant case for several reasons. First, she maintains that Judge Adams erred in conducting the CMC, ordering the parties to engage in discovery, and requiring her to submit medical authorizations when (1) the Court had failed to rule on Defendants' Motion for Partial Dismissal; and (2) Defendants had failed to answer the remaining counts in the Amended Complaint. (Doc. No. 99 at p. 12.) She maintains it "would be asinine to release privacy-protected information at this stage of the game," when her case might be dismissed as a result of Defendants' motion or, alternatively, the Defendants might be found in default. (*Id*.) She further argues that Judge Adams' order to provide medical authorizations was intrusive, overly broad, premature, and unconstitutional. (*Id.* at p. 13.)

Plaintiff then argues that this Court relied on "clearly invalid findings of fact and improperly appl[ied] the law using an erroneous legal standard" when it dismissed the case pursuant to Rule 41(b). (*Id*. at p. 21.) She maintains that she did not defy Court Orders or otherwise behave willfully or in bad faith because "the Defendants were not entitled to this discovery until other preliminary matters were addressed," including (among other things) resolution of the Defendants' Motion for Partial Dismissal. (*Id*. at p. 23.) Plaintiff makes clear that, until these matters are resolved, "then and only then would [she] allow for the release of her own relevant privacy-protected information." (*Id.*)

Plaintiff also maintains that the Court failed to adequately acknowledge or consider the reasons for her failure to comply with the Court's Orders; i.e., her significant health issues including symptoms relating to her Complex PTSD. Plaintiff goes on to assert that dismissal was inappropriate

9

because lesser sanctions should have been considered and she was not sufficiently warned that the case might be dismissed. (*Id*. at p. 26.)

Finally, Plaintiff argues that both Judge Adams and the undersigned are biased and prejudiced against her. She claims that Judge Adams' decision to conduct a CMC in this case is contrary to his typical procedure in cases where Motions to Dismiss are pending and demonstrates that he is hostile both to her and her claims. Plaintiff maintains the reassignment of this case to the undersigned was the product of a conspiracy to deprive her of her constitutional rights and complains that the undersigned granted Defendants' motion in "marathon like" fashion. Finally, Plaintiff questions whether this Court is actually an Article III Court, arguing (at length and throughout her Motion) that "this federal court is completely infiltrated by extraneous organizations where these judges' sole oath is not to the 1789 U.S. Constitution." (*Id*. at p. 4.)

The Court finds Plaintiff has not demonstrated a clear error of law or extraordinary circumstances requiring either relief from, or reconsideration of, the Court's July 26, 2019 Memorandum Opinion & Order dismissing her case pursuant to Rule 41(b). Plaintiff's arguments regarding the propriety of Judge Adams' decisions to conduct a CMC, allow discovery, and order medical authorizations were fully considered and rejected in this Court's July 26, 2019 decision. Plaintiff has offered no legal authority or other basis for this Court to revisit these rulings as either clearly erroneous or to prevent a manifest injustice. Nor has she introduced any newly discovered evidence or argued that there was an intervening change in controlling law that would warrant reconsideration of the Court's July 26, 2019 decision.

Notwithstanding the above, the Court finds the specific arguments set forth in Plaintiff's Motion to be without merit for the following reasons. Plaintiff argues at length that she should not

10

have been required to engage in discovery or submit medical authorizations when her case might be dismissed as a result of Defendants' Motion for Partial Dismissal. However, as the Court noted in its July 26, 2019 decision, Defendants' Motion for Partial Dismissal did **not** seek dismissal of Plaintiff's reasonable accommodation or retaliation claims against Stark State College under the ADA and Title VII. As noted above, in these claims, Plaintiff alleges that "as a direct and proximate result" of Defendant's conduct, Plaintiff has "suffered severe emotional trauma requiring ongoing treatment and loss of income and benefits" (Count II) and "endure[d] considerable emotional distress and negative health impacts" (Counts III and IV). (Doc. No. 31 at ¶¶ 118, 122, 126.) Thus, even if Defendants' Motion for Partial Dismissal had been granted in full, discovery would have nonetheless proceeded as to these claims, including discovery regarding Plaintiff's emotional distress, medical treatment, and "negative health impacts." [2]

While the Court understands Plaintiff's concerns about the privacy of her medical records, Plaintiff put those records at issue when she filed this lawsuit and sought damages for health care costs, negative health impacts, and emotional pain and suffering. Judge Adams nonetheless specifically advised counsel during the CMC that, "if there's anything in particular that's limited in nature that you think is something that should not be disclosed," then counsel could file a motion for the Court to consider the matter under seal. (Doc. No. 45 at Tr. 37.) Indeed, later in the proceedings, upon Plaintiff's counsel request, Judge Adams stated Plaintiff need not provide medical authorizations for certain categories of health records. (*Id*. at Tr. 63-64.) Thus, Judge Adams outlined

---

[2] The Court also rejects Plaintiff's argument that she should not have been required to participate in discovery because Defendants were in default. Defendants timely filed their Motion to Partially Dismiss and actively participated in these proceedings throughout the entire time this matter was pending. Under the circumstances presented, Plaintiff's argument that default judgment should have been entered against Defendants is without merit.

11

a procedure for Plaintiff to object to the disclosure of medical records under certain circumstances and showed a willingness to exclude certain records upon a proper showing that such records were not relevant. In addition, the Court notes that Plaintiff could have sought a Stipulated Protective Order to protect the privacy of her health records. Instead of pursuing either of these options, however, Plaintiff simply refused to cooperate. Plaintiff has provided no basis for the Court to reconsider its finding of willfulness and contumacious conduct.

The Court also rejects Plaintiff's argument that the Court failed to acknowledge or adequately consider her significant health issues, as outlined in the letters submitted on her behalf by her therapist. The Court did, in fact, specifically address this very issue in its July 26, 2019 decision, as follows:

> The Court acknowledges Allen's claim that she is unable to comply with the Court's Orders in this matter due to her Complex PTSD, and has reviewed and considered the various letters submitted by her therapist to that effect. *See, e.g.,* Doc. No. 27-2; Doc. No. 27-3; Doc. No. 32-3; Doc. No. 43-2; Doc. No. 48-1; Doc. No. 73 at 4; Doc. No. 79 at 14. However, the Court notes that, despite her symptoms, Allen has nonetheless been able to participate in these proceedings when it suits her to do so, as evidenced by her numerous filings since withdrawal of counsel.

(Doc. No. 96 at fn 5.) Thus, it is clear the Court acknowledged this issue and carefully reviewed the letters submitted by Plaintiff's therapist in evaluating Defendants' Motion to Dismiss pursuant to Rule 41(b). Upon review of the docket and the history of Plaintiff's *pro se* filings in this case, however, the Court rejected Plaintiff's arguments that her repeated noncompliance with Court orders should be excused due to her health issues. Plaintiff offers no reason in her Motion to Vacate for the Court to reconsider this ruling.

In sum, the Court finds no basis to reconsider its decision to dismiss the instant case. Plaintiff was clearly aware of the Courts' Orders and her discovery obligations but refused to comply because

she disagreed with the manner in which Judge Adams decided to manage the instant case and felt it would be "asinine" for her to have to submit to his Orders.[3] As a result, discovery languished for over 8 months, causing Defendants significant prejudice. Moreover, contrary to Plaintiff's arguments, the Court expressly warned Plaintiff that her case could be dismissed if she failed to attend the April 11, 2019 Status Conference. Lastly, the Court will not reconsider its decision that lesser sanctions would have been more appropriate. Plaintiff makes quite clear in her Motion to Vacate that she had no intention of complying with either Judge Adams' Orders or her discovery obligations under the Federal Rules of Civil Procedure until her conditions were met; i.e., until Defendants' Motion for Partial Dismissal was resolved and the issue of default was addressed to her satisfaction. (Doc. No. 99 at p. 23.)

Finally, the Court rejects Plaintiff's arguments that either Judge Adams or the undersigned were biased or that this Court is involved in a vast conspiracy against her. Judge Adams' decisions to conduct a CMC, order discovery, require Plaintiff to submit medical authorizations, and order her to attend a status conference were entirely appropriate under the circumstances, well within his discretion, and not contrary to law. The undersigned also rejects Plaintiff's arguments that this Court dismissed the instant case due to bias or prejudice. Plaintiff claims the undersigned dismissed the case as "revenge" for a statement Plaintiff made in a Sixth Circuit filing indicating she intended to file a motion to disqualify the undersigned. Plaintiff is incorrect. The undersigned was not, in fact,

---

[3] The Court rejects Plaintiff's argument that she was excused from complying with Judge Adams' Orders in light of a non-document Order issued by the undersigned on July 1, 2019 terminating all deadlines and hearings set by the previous District Judge. As an initial matter, that Order was solely intended to terminate future hearings, and not to void previously imposed discovery deadlines or to void deadlines that had already passed. More importantly, by the time the July 1, 2019 Order was issued, Plaintiff was already well in default of Judge Adams' orders that she submit medical authorizations, participate in discovery, and attend the April 2019 Status Conference. Plaintiff's argument that the July 1, 2019 Order somehow "wiped the slate clean" is entirely without merit.

aware that Plaintiff intended to file a motion to disqualify, as the document cited by Plaintiff was not docketed in this Court until three days after the July 26, 2019 decision was issued. Rather, the Court dismissed Plaintiff's case for the many reasons set forth in its July 26, 2019 Opinion & Order. Neither bias or prejudice played any part in the Court's decision. Plaintiff's arguments to the contrary are without merit, as are her suggestions that the instant Court is not an Article III Court or that the undersigned is not bound by the U.S. Constitution.

Accordingly, and for all the reasons set forth above, Plaintiff has failed to demonstrate any basis to alter, amend, or vacate the Court's July 26, 2019 Orders under either Rule 59(e) or Rule 60(b). Plaintiff's Motion to Vacate (Doc. No. 99) is, therefore, denied.

### III. Conclusion

For all the reasons set forth above, Plaintiff's Motion to Vacate (Doc. No. 99) is DENIED.

**IT IS SO ORDERED.**

Date: October 4, 2019

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE